were uttered of and to the plaintiff, and consequently repels the ground on which the objection is based. There are two or three questions which, as the record is constituted, we cannot safely or prudently consider, and the remaining points we are not disposed to examine, since they will not be likely to arise on another trial.

The judgment below must be reversed with costs, and a new trial ordered.

The other Justices concurred.

—◆—

## Freeman McClintock v. Harriet C. Laing and Alva C. Laing.

*Equity : Bill to enforce a verbal agreement for a lien.* A bill in equity, to enforce a verbal agreement for lien upon real estate, will not be sustained in a case where the terms of the agreement are not sufficiently clear and specific to enable the court to give effect to the understanding of the parties. See *Mowrey v. Vandling, 9 Mich.,* 39.

*Practice in chancery: Notice by solicitors: Suppressing depositions.* A notice of a proceeding in a suit in chancery, not signed by the solicitor, nor by his authority, nor emanating from his office, may be disregarded; and testimony taken under such a notice may properly be suppressed.

*Heard January 3. Decided January 10.*

Appeal in Chancery from Shiawassee Circuit.

The bill was filed by Freeman McClintock, in the Circuit Court for the County of Shiawassee, in Chancery, against Harriet C. Laing and Alva C. Laing, to foreclose a mortgage executed by the defendants to one Peter Laing,—the title to which the complainant had acquired by purchase,— and to enforce an alleged verbal agreement made by the defendants with the complainant, to execute a mortgage upon a parcel of land adjoining the premises covered by

the mortgage. The defendant, Harriet C. Laing answered, and the bill was taken as confessed against the other defendant. A replication was filed and proofs were taken. After the proofs had been taken the complainant moved that the testimony for the defendant be suppressed, because taken without proper notice. The motion was supported by the affidavit of the solicitor of the complainant, stating —"That annexed is the only notice of taking testimony ever served on the deponent on the part of the defendant, Harriet C. Laing, in this cause. That the same was handed to deponent by a colored man that he did not then know, and who was then an entire stranger to him. Deponent further says that S. T. Parsons, Esq., is the solicitor for the defendant, Harriet C. Laing, and the only solicitor of record of such defendant, and he is also well acquainted with the handwriting of S. T. Parsons, the said defendant's solicitor. That on the receipt of said notice, deponent examined the signature, and he was then and is now well satisfied that said notice and the signature thereto is not the handwriting of said S. T. Parsons. That he is not acquainted with other signatures attached to said notice. Deponent further says that from the way said notice was served, and from an examination of the signatures thereto, he came to the conclusion that the same was not made by any person authorized to take proceedings in the cause, and he gave it no attention, and he so believed until on his way to Flint on the 29th day of June, 1868, at Gaines, deponent met Mr. Charles Draper, who informed deponent that he had been called upon to take testimony under said notice."

The motion to suppress the defendant's proofs was granted, and the time for taking proofs extended sixty days. No further proofs being taken, the cause was heard upon pleadings and proofs, and a decree entered for the complainant

in accordance with the prayer of the bill. From this decree, the defendant, Harriet C. Laing, appeals to this court.

*E. Gould,* for complainant.

*Otto Kirchner,* for defendant.

COOLEY, J.

The bill in this case appears to have been filed to enforce an equitable lien on eight acres of land, and also to foreclose a mortgage on two acres of the same land.

The facts out of which the alleged equitable lien is alleged to have arisen, as stated in the bill, are substantially the following: In February, 1857, the defendant, Alva C. Laing (who is, or at least then was, the husband of the other defendant) was owner of the ten acres of land above mentioned, and being then indebted to complainant, and being also desirous of obtaining from him advances. to enable this defendant to build a house and make other improvements on said land, conveyed the land to complainant by a deed absolute in form, his wife joining therein, which deed, however, was intended as a mere security for such indebtedness and advances. While complainant so held said land as security, said Alva C. Laing proposed to him that it be reconveyed, and said Alva would file the necessary document in the office of the register of deeds setting the same apart as a homestead, and would then give complainant a mortgage signed by himself and wife to secure the amount due to complainant. And complainant, relying upon this promise, did reconvey the land to said Alva by deed, dated May 23, 1859, and said Alva did then file the necessary document setting the land apart as a homestead, but after he had done so refused to execute the mortgage as agreed. The bill alleges that defendant, Harriet C. Laing, knew of

the indebtedness and advances, and that the same accrued and were made to aid said Alva in the purchase of said land and in the improvement thereof; and she was also cognizant of the agreement to secure the same by mortgage. The bill was filed May 27, 1867, and amended August 14, 1867, at which time the sum of five hundred and seventy-seven dollars was claimed to be due and secured by this equitable lien.

The first thing that strikes the mind as particularly noticeable in connection with this alleged lien, is the fact that it was suffered to lie, without apparent reason, for eight years after complainant had been notified that Alva C. Laing did not intend to observe his agreement to give a mortgage. It is true, that under ordinary circumstances, the fact that a creditor delays for a series of years after his debt falls due to take proceedings for its enforcement, is not a circumstance which can prejudice his right, provided the period which elapses is less than that fixed by the statute of limitations as the period of legal bar to claims of that class or to those of analogous character. He has a right within the limits of that period to indulge his debtor, and may do so without justly giving rise to any suspicion of the equity and legality of the demand, so long as the debtor is taking no action inconsistent with a recognition of its validity; but if he asserts a demand which ought by the law to be evidenced by writing, but which rests in parol, as he alleges, because of the fraudulent, or at least dishonest, refusal of the debtor party to execute the writing agreed upon, a strong presumption must necessarily arise that his claim is unfounded, if for a considerable period of time, without any obvious or assigned reason, he neglects to take the legal proceedings which one would naturally resort to with promptness if his assertions were true. A party who complains of fraud should be prompt in seek-

ing relief; and especially if the case is one where relief is to be obtained by charging or encumbering real estate on the strength of parol evidence, he cannot be allowed with impunity to lie by until the lapse of time can justly be supposed to have rendered the real transaction difficult or impossible of proof, or until a change in the circumstances of the parties may introduce new elements of difficulty in the adjustment of the equities. Such a case ought to be presented while the facts are recent, and any very serious delay ought to be well excused.

If we look through the facts disclosed by this record for any excuse, we do not find any which benefits the complainant. While he has been sleeping on his rights, the position of the other parties has changed in important particulars. Harriet C. Laing has become the owner of the land, and Alva C. Laing claims to have obtained a divorce from her, and now appears as a witness in this case to make out the necessary facts to establish this lien. The present suit was not instituted until the debtor defendant had parted with the property to be charged, and he comes forward with his testimony to establish a lien for his own debt upon land owned by his co-defendant, with whom in the meantime he has had difficulties sufficient, in his opinion, to justify his sundering the most important and sacred relation of life. This aspect of the case, it must be confessed, is not an agreeable one, and it is very suggestive of a probability that this suit would never have been instituted after this long and significant lapse of time but for these domestic difficulties. A court must find it difficult to feel quite confident that it is not upon them that the complainant relies rather than upon the equities of his case.

We are not disposed, however, to place our decision on this branch of the case on the laches of the complainant in asserting his right by suit. There is another difficulty

in the case which we think conclusive. The bill, so far as
this alleged equitable lien is concerned, is in the nature of
a bill for the specific performance of a contract. The com-
plainant's equity is based upon the refusal to perform a
parol agreement to give a mortgage upon lands. Such an
agreement ought to be clear and specific in its terms, and
to contain within itself such elements of certainty that the
court can give effect by its decree to the real understand-
ing of the parties. Nothing should be left to conjecture,
and the court should not be required, in order to give any
effect whatever to the agreement, to add terms and stipula-
tions in which it is deficient, and without which the con-
tract will be impossible of execution.

The only terms of the contract stated with certainty in
the bill are, that the defendant would secure the complain-
ant the amount then owing to him, by mortgage on the
land described. The sum then owing is not stated, nor
does any time appear to have been fixed within which the
mortgage was to have been made payable, nor in what
installments, nor on what interest. Nothing could well be
more indefinite than this agreement, as stated in the
bill and in the evidence; and nothing appears to have
been done by complainant after the alleged refusal to
perform, in order to render it more certain. No mortgage
is shown to have been ever prepared for execution, or
demand to have been made that any particular sum should
be secured to be paid within any particular time. To
enforce a contract here we must first make one; and we
must make it, also, without any such information as would
enable us to determine whether the terms we should fix
upon would probably have been assented to by the parties
respectively or not.

Were this a bill to enforce a vendor's lien for the pur-
chase price of land sold and conveyed without any agree-

ment or understanding for credit, no such difficulty would arise, because the law would imply that payment was to be made immediately.    But the terms of the understanding as given by complainant clearly show that a credit was understood; but whether for one year or for ten, and whether the whole sum was to be paid at one time or in small installments, we are not told.   There is no implication of law that can supply this deficiency, and we have no power to supply it ourselves.   We are compelled, therefore, to dismiss this claim from further consideration.    See *Mowrey v. Vandling, 9 Mich., 39.*

Upon the other branch of the case a question of practice becomes important.    Mrs. Laing interposed a defence to the mortgage, and took evidence in support of such defence.    This evidence, however, was suppressed by the circuit court as irregularly taken, because the notice of taking the same did not proceed from any party having a right to give it.    The notice appears to have been unobjectionable in form, except that the name of one of the defendants was incorrectly spelled, and the signature appended was " S. T. Parsons, Attorney," instead of " S. T. Parsons, Solicitor," as it should have been.   The solicitor for complainant made affidavit that he examined this signature and saw that it was not in the handwriting of Mr. Parsons; that the notice was served upon him by a stranger, and he came to the conclusion that it did not emanate from any person authorized to give it, and therefore disregarded it. It cannot be denied that the errors in the notice were such as were not likely to occur in a paper coming from the office of any respectable solicitor, and that they were well calculated to lead one to believe the notice unwarranted. In the circuit court, on the motion to suppress, no explanation appears to have been given on behalf of the defendants; and in this court it appears to be assumed by counsel on

both sides, that the notice was in fact given by one of two persons, who were not solicitors, but who, to a greater or less extent, had assumed the management of the defence, but whether with or without the consent of the solicitor we are not advised.

Notices in chancery causes must regularly come from the solicitor; and while we do not think the practice requires that they should always be signed by him in person, we do not perceive any ground on which the opposite party can be compelled to give heed to a notice which neither has the solicitor's signature to it, nor comes from his office, nor bears upon its face any indication of having been given with his assent. How far counsel regularly engaged in a cause may presumptively be authorized to make use of the solicitor's name in giving notices or stipulations, is a question not now presented; but persons not officers of the court can have no such presumptive authority, and the solicitor for the opposite party may well resent their assuming to possess it. A person who undertakes to give a notice by which a party in litigation is to be compelled to govern his action, ought to be one approved by the court for his character and legal learning; and where one, not thus approved, assumes to take in the name of another proceedings which he is not authorized to take in his own name, we think the court may rightfully set the proceedings aside. The solicitor himself is forbidden under penalty to allow the use of his name to such a person.—*Comp. L.* § *4021.* The policy of the law is that the court shall be supported by a body of practitioners whose learning may aid its deliberations, and whose character may afford reasonable guaranty that the rights of suitors will not suffer from their misconduct; and the court possesses very summary powers to deal with such as conduct themselves improperly. It is proper, therefore, that the court should exercise a

supervision over the selection of such persons, and subject them to tests of fitness; and it is not the right of other persons to assume the duties of this important office without the consent of the court, and without having undergone these tests. We say nothing now of any right a suitor may have under the constitution (*Art. 6 § 24*), to select and appoint any agent of his choice for the purpose of managing his suit. No question concerning that right could arise in this case, in which the defence was being conducted by a solicitor of the court.

The evidence for the defence being properly suppressed, we think the court had no discretion but to give decree for the amount of the mortgage. But the decree actually made having been too great, it must be reversed, and the cause remanded with direction to enter a decree in accordance with these views. The court below will order a reference for the purposes of an accounting, and as the pleadings on both sides show the complainant to be in possession of the land, or a portion thereof, the accounting will take this into consideration as well as any other proper deductions. The defendant, Harriet C. Laing, is entitled to costs of this court.

The other Justices concurred.