# James O. Blanchard v. The Detroit, Lansing & Lake Michigan Railroad Company.

*Covenants : Condition : Rule for distinguishing : Grantor : Grantee.* One of the settled rules for deciding between covenants and conditions is, that in doubtful cases the writing shall be held a covenant, and is based on the idea that a condition, as tending to destroy the estate, would be less favorable to the grantee; but the reason of this rule is confounded and the rule inapplicable in a case where the grantor seeks to have the writing enforced as a covenant, and the grantee contends that it is but a condition.

*Immaterial matters : Parties : Individual : Corporation.* The fact that one of the parties to an instrument is a natural person and the other an artificial one gives no significance whatever to the legal merits, nor does it in any manner bear upon the proper exposition and application of the controlling principles.

*Condition : Covenant : Interpretation : Legal import of the words used.* The determination of the question whether a clause in a deed, of which the language is plain and unambiguous, is a covenant or a mere condition subsequent, is a matter only of the legal interpretation and meaning of its terms, unaffected by any erroneous impression either party may have formed respecting its operation; and it is of no consequence, where the terms of the clause are clear and strong to fix its legal import, that it is referred to elsewhere in the deed as being a covenant.

*Conditions defined.* An estate upon condition is one which has a qualification annexed, by which, on the happening of a particular event, it may be created, enlarged, or destroyed; if set forth, the condition is express; and if it allows the estate to vest, and then to be defeated in consequence of non-observance of the requirement, it is a condition subsequent.

*Conditions : Covenants : Promissory words.* A writing possessing many of the characteristics of a condition may sometimes be susceptible of operating also as a covenant; but this only where it contains promissory words, or words which, in the light of pertinent facts, are fairly capable of a promissory sense.

*Deeds : Clause construed : Condition subsequent : Covenants.* The following clause, coming after the description and preceding the *habendum*, in a deed to a railroad company : "But this conveyance is made upon the express condition that said railroad company shall build, erect and maintain a depot or station-house on the land herein described, suitable for the convenience of the public, and that at least one train each way shall stop at such depot or station each day when trains run on said road, and that freight and passengers shall be regularly taken at such depot," is held to be an express condition subsequent, and not a covenant, nor specifically enforceable as one against the grantee.

*Equity jurisprudence : Specific performance : Daily running and stopping of railroad trains, etc. : Jurisdiction.* If such a provision in a grant were susceptible of being understood in a promissory sense and of being considered as in the nature of an agreement by the grantee with the grantor, it is not capable of specific enforcement by the court; waiving the consideration of all other objections, it is held incompetent for the court to take upon itself for all the future to supervise the daily running and stopping of trains, both passenger and freight, and the regularity of action in regard to the reception and discharge of passengers and freight; and the specific enforcement of the undertaking in question would involve the exercise of precisely this extraordinary jurisdiction.

BLANCHARD *v.* DETROIT, LANSING & LAKE MICH. R. R. Co.

*Specific performance: Lack of details: Particularity: Matters left in discretion.* But there is still another objection to the specific enforcement of this undertaking, in the want of details and lack of particularity and specification in the agreement; waiving other similar deficiencies, neither the specific location for the building, nor any thing certain as to the plan, size, shape, materials or arrangement, is given, but all this, by assent of the parties, has been left substantially to the discretion of the grantee, subject, only to the limitation that it should be suitable for the convenience of the public; and while this might be sufficiently definite for many purposes, it is not so for a building contract, or an agreement to be executed by the court.

*Equity jurisprudence: Specific performance: Basis of the jurisdiction: Contracts.* The jurisdiction of equity in specific performance proceeds on the supposition that the parties have not only agreed, as between themselves, upon every material matter, but that the matters so agreed upon are of such a nature, and the subjects of enforcement so delineated or indicated, either directly or by reference to something else, or so raised to view by legitimate implication, that the court may collect and place in their proper relations all the essential elements, and proceed intelligently and practically in carrying into execution the very things agreed upon and standing to be performed; and if the things to be performed are in their nature incapable of execution by the court, or if needful specifications are omitted, or if material matters are left by the parties so obscure or undefined, or so in want of details, or if the subjects of the agreement are so conflicting or incongruous, that the court cannot say whether or not the minds of the parties met upon all the essential particulars, or if they did, then cannot say exactly upon what substantial terms they agreed, or trace out any practical line where their minds met, the case is not one for specific performance.

*Specific performance: Contracts: Matters left in discretion: Jurisdiction.* The courts do not assume to make contracts for parties, neither do they undertake to supply material ingredients which the parties contracting omit to mention, and which cannot be legitimately considered as having been within their mutual contemplation; and where the party to perform is left by the agreement with an absolute discretion respecting material and substantial details, and these are therefore indeterminate and unincorporated, until by his election they are developed, identified and fixed as constituents of the transaction, the court cannot substitute its own discretion, and so by its own act perfect and round out the contract.

*Equity jurisprudence: Specific performance: Compensation: Uncertainties: Jury trial: Complete award: Series of daily acts: Partial award.* This case is held not to be a proper one for the court to retain for the purpose of granting the alternative relief prayed for by way of allowance of damages in the nature of compensation; the uncertainties and lack of details which mark the case, and the want of land-marks, boundaries and specifications, and the absence of proper *data*, as well as the aptness of the subject for a jury, would preclude the granting of such relief in equity; and, moreover, a full and complete award for refusing to perform a series of daily acts to extend through all the future, which is what the writing in question chiefly stipulates for, would be impossible upon any *data* afforded by the case; and a partial award, for present damages, would be, not only futile, but would be an unwarrantable departure from principle.

*Heard October 29. Decided January 6.*

Appeal in Chancery from Ionia Circuit.

*Clute & Smith,* for complainant.

*Bell & Hutchinson* and *G. V. N. Lothrop,* for defendant.

GRAVES, CH. J.

The court below having dismissed the complainant's bill after hearing on pleadings and proofs, he has appealed to this court.

He sets up a conveyance made by himself and wife to the Ionia & Lansing Railroad Company in June, 1870, of certain ground on his farm, for a track and depot, the subsequent consolidation of that company with the Detroit, Howell & Lansing Railroad Company, and the assumption by the resulting organization of the name ascribed to defendants in the title of the cause.

The consideration clause of this deed stated that the conveyance was made " in consideration of five hundred dollars *and the covenant to build* a depot hereinafter mentioned," and following the description and preceding the *habendum* was the following clause : " But this conveyance is made upon the *express condition* that said railroad company shall build, erect and maintain a depot or station-house on the land herein described, *suitable for the convenience of the public,* and that at least one train each way shall *stop at such depot or station each day when trains run on said road, and that freight and passengers shall be regularly taken at such depot."* Apart from these passages the deed was in common form, and silent in regard to a depot. Together with other matters not necessary to be mentioned, the bill alleged acceptance of the deed, and that the company built the road over the land granted, and that for some time past the consolidated organization has used and occupied the road for running trains; that complainant, in granting to the company, was largely influenced by his expected accommodations, in having a depot at his place, and the rise in value which it would cause to his surrounding property; that by accepting the grant the company became bound to perform as specified in the second of the foregoing clauses, but have totally refused to comply with, or abide by it, and that complainant is enti-

tled to insist on specific performance, or if that be found improper, then to such compensation as will indemnify him.

The answer asserts, and this is admitted, that the deed was wholly prepared by complainant's legal adviser, and that complainant refused to convey on any other terms. The answer then avers that the clause concerning a depot, and now assumed by complainant to operate as a covenant, is not one, nor entitled to operate as one, but is simply and purely a condition subsequent, and that the company, having become satisfied that compliance with it would be detrimental to the public interest and their own, decided not to observe it, and had therefore refused to abide by it.

The answer also claims the benefit of a demurrer for want of equity.

A peculiar feature of this cause is, that it is the grantee, and not the grantor, as is almost invariably the case, who maintains that the important clause in the grant which the grantor relies upon as a covenant, is a condition, and one, too, which the grantee has distinctly violated. This is the more noticeable since one of the settled rules for deciding in doubtful cases that the writing is a covenant, and not a condition, is based on the idea that a condition, as tending to destroy the estate, would be less favorable to the grantee.—*4 Kent's Com.*, *129, 132.*

The position of these parties confounds the reason of this rule, and would dispense with the rule itself if the case were a doubtful one.—*Catlin v. Springfield Fire Ins. Co.*, *1 Sumn.*, *434, 440.*

The real questions necessary to be decided will hardly admit general reasoning or nice deductions. Aside from reasons very manifest, they depend upon authority, and can only be lawfully determined in accordance with principles which have been fully recognized and adjudged. And the circumstance, that one of the parties is a natural and the other an artificial person, gives no significance whatever to the legal merits, nor does it in any manner bear upon the

proper exposition and application of the controlling principles.

The complainant and the other party to the grant, being both competent, and able to act independently and look after their respective interests, voluntarily bargained with each other, and complainant, being assisted by counsel, caused a provision couched in terms of his own choice to be incorporated in the grant, and the grantee deliberately accepted the grant so drawn, and the defendant, as successor of the grantees, expressly and finally refuses to execute the provision in question.

After insisting that this provision was binding on them in no other sense or extent than as a *condition subsequent*, and as a necessary consequence that it affords no basis whatever for any relief exclusively dependent upon promissory undertaking, the defendant further insists that if the controverted clause, or rather the clause of which the *nature* is controverted, were to be regarded as promissory, still its positive enforcement must be declined in equity, *first*, on the ground of public policy, and *second*, on the ground that its requirements are on the one hand *positively* unsuitable to be enforced by chancery, and on the other hand that in many indispensable particulars the subject matter is left too much at large, too vague, and too much in want of detail, to admit of execution by the court.

The first question for consideration appears naturally to be, whether the particular clause in the deed is a covenant or mere condition subsequent, having no promissory force; and this is purely a question of authority. The language of the clause itself is plain and unambiguous, and the grant must have effect according to the legal interpretation and meaning of its terms, and not according to any erroneous impression either party may have formed respecting its operation.—*Furbush v. Goodwin, 5 Fost., 425.*

Much stress was placed by complainant's counsel upon the phrase in the consideration clause, which speaks of an after-mentioned *covenant* to build a depot. Now this ex-

pression must be taken to refer to the subsequent clause about whose operation the parties differ, or it must otherwise be taken as a mere purposeless expression.

The reasonable opinion would seem to be, that this statement in the consideration clause was actually intended to refer to the later provision respecting the depot, and to expressly mark that the right it evidenced was part of the consideration.

It is hardly admissible to suppose that the grantor carefully introduced this phrase, and then omitted to insert any thing to satisfy what he considered the phrase called for.

But, conceding the expression was meant to apply to the subsequent passage, it is another and a very different question, whether it is entitled to control the proper meaning and nature of that passage. It may be fully admitted that if the terms of the main clause were not clear and strong to fix its legal character, or if the other portions of the instrument were such as to cause the mind to hesitate about its legal significance, the words of the consideration clause might be resorted to, to help to a conclusion in harmony with the literal import of these words. But this is not the case. Apart from the expression in the consideration clause, the subsequent provision, as well as the residue of the instrument, is too perfectly worded and too precise, to admit of any doubt whatever.

Independently of such first expression, there is no ambiguity, and no obscurity.

Now, in alluding as they did, when writing down the statement of consideration, to the positive provision as a covenant, we may suppose that at the most the parties manifested their opinion of the legal nature of the stipulation. But as this clause was precisely in the form desired, their opinion of the character the law impressed upon it, or their idea of the name belonging to it, whether indicated by giving it a specific designation, or in some other way, cannot alter its necessary legal nature. The books are full

of illustrations of this point. When an instrument or provision is clearly and distinctly so drawn and consummated that the law at once attaches, and determines that it possesses a specific legal nature, and exclusively belongs to a given class of transactions, the parties cannot, by arbitrarily assigning a name to it wholly foreign to its true character, succeed in transforming it, and so cause it to stand and operate in a manner wholly alien to it. To conclude otherwise would be to reject the legal *criteria* of certainty in written transactions.—*Radcliff v. Rhan*, 5 *Denio*, 234; *Scudder v. Bradbury*, 106 *Mass.*, 422; *Pearce v. Grove*, 3 *Atk.*, 522; *Rice v. Ruddiman*, 10 *Mich.*, 125; *Railroad Co. v. Trimble*, 10 *Wall.*, 367; 1 *Cow. & H. Notes*, 211, *et. seq.* Even when the legislature holds a mistaken opinion concerning the law, it does not change it.—*Postmaster G. v. Early*, 12 *Wheat.*, 136; *Talbot v. Seeman*, 1 *Cr.*, 1; *Mersey Docks v. Cameron*, 11 *H. L.*, 443, per Lord Chelmsford, p. 518; *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 *How.*, 272, 285. A plain condition cannot be converted into a perpetual covenant by calling it one. This sentence, then, cannot be allowed to alter the intrinsic nature of the main provision. In noticing the position that the consideration clause in the deed ought to help to an opinion that the second clause constituted a covenant, and not a mere condition subsequent, we have assumed that the terms of this second clause are so clear and explicit that there is no room for any real question touching its intrinsic legal nature and true denomination. A few words may be now proper to sustain the validity of this assumption. We have seen the language of the provision; and its position in the instrument, as well as its authorship, has been explained.

How do the authorities apply to it? An estate upon condition is one which has a qualification annexed, by which, on the happening of a particular event, it may be created, enlarged or destroyed. If set forth, the condition is express; and if it allows the estate to vest, and then to be defeated

in consequence of non-observance of the requirement, it is a condition subsequent.—*2 Bl. Com., ch. 10 ; 4 Kent's Com., ch. " Of Estates on Condition ;" Co. on Lit., 201 a, 215 a, 215 b, 233 b, 234 b, 251 b ; Bac. Ab., Tit. Con.; Com. Dig., Tit. Con.; Shep. Touch., ch. 6 " Of Conditions."*

The author of the Touchstone says : "Conditions annexed to estates are sometimes so placed and confounded amongst covenants,—sometimes so ambiguously drawn,—and at all times have in the drawing so much affinity with limitations, that it is hard to discern and distinguish them. Know, therefore, that for the most part conditions have *conditional words in their frontispiece,* and do begin therewith ; and that amongst these words there are three words that are most proper, which, in and of their own nature and efficacy, without any addition of other words of re-entry in the conclusion of the condition, do make the estate conditional, as : *proviso, ita quod,* and *sub conditione.*    And, therefore, if A grant lands to B, to have and to hold to him and his heirs, *provided that,—or so as,—or under this condition,*—that B do pay to A ten pounds at Easter next ; this is a good condition, and the estate is conditional without any more words."—*p. 121.* See, in addition to the books last cited, *Wash. on R. P., and Hilliard on R. P.* The question whether there is a limitation or a condition, or whether there is a condition precedent or subsequent, or whether what is to be expounded is a condition or covenant, or something capable of operating both ways, frequently becomes very perplexing in consequence of the uncertain, ambiguous, or conflicting terms and circumstances involved; and the books contain a great many cases of the kind, and not a few of which are marked by refinements and distinctions which the sense of the present day would hardly tolerate.

Where, however, the terms are distinctly and plainly terms of condition, where the whole provision precisely satisfies the requirements of the definition, and where the transaction has nothing in its nature to create any incon-

gruity, there is no room for refinement, and no ground for refusing to assign to the subject its predetermined legal character. In such a case the law attaches to the act and ascribes to it a definite significance, and the parties cannot be heard to say, where there is no imposition, no fraud, no mistake, that, although they deliberately made a condition, and nothing but a condition, they yet meant that it should be exactly as a covenant.

Among the numerous cases serving to illustrate the subject which have been examined, the following may be referred to:—*Michigan State Bank v. Hastings, 1 Doug., 225, 229, 230, 249 to 256; Merritt v. Harris, 102 Mass., 326; Tilden v. Tilden, 13 Gray, 103; Gray v. Blanchard, 8 Pick., 284; The Attorney General v. The Merrimack Manufacturing Co., 14 Gray, 586; Allen v. Howe, 105 Mass., 241; Jackson v. Florence, 16 J. R., 47; Jackson v. Allen, 3 Cow., 220; Livingston v. Stickles, 8 Paige, 398; Stuyvesant v. The Mayor, 11 id., 414; Palmer, Supervisor, v. The Fort Plain and Cooperstown Plank Road Co., 1 Ker., 376; Hefner v. Yount, 8 Blackf., 455; Cross v. Carson, id., 138; Lessee of Sperry v. Pond, 5 Ohio, 387; Wheeler v. Walker, 2 Conn., 196; Willard v. Henry, 2 N. H., 120; Doe v. Asby, 10 Ad. & El., 71; Churchward v. The Queen, L. R., 1 Q. B., 173, per Shee, J., 211; Mead v. Ballard, 7 Wall., 290.*

The cases are of course numerous where, on controversy about the meaning or operation, the writing has been held either to create a limitation or a covenant, or to work both as a condition and covenant. But on examination it will appear that in all the cases in which it has been deliberately determined that the writing, though possessing many or all of the characteristics of a condition, was still susceptible of operating as a covenant, there were grounds for claiming that promissory words existed, or at least words which, in the light of pertinent facts, were fairly capable of a promissory sense. Among the cases of this class, are the

following :—*Spaulding v. Hallenbeck, 35 N. Y., 204 ; Stuyvesant v. The Mayor, ubi supra ; Doe v. Watt, 8 B. & C., 308.*

And it is believed that no considered case can be shown, that assumes to decide that a writing which, like that before the court, precisely answers, in verbiage, position, and relative facts, to all the requirements for an express condition subsequent, and stands without any thing except the hasty opinion of the grantor to gainsay its apparent legal nature, is either a covenant, or susceptible of being proceeded on as a covenant, in opposition to a claim by the grantee that it is a bare condition, and which by his nonobservance has entitled the grantor to forfeiture.

The result, upon the whole, is, that the provision relied on by complainant as a covenant to be specifically enforced against the defendants, must be considered an express condition subsequent, and not a covenant, and not specifically enforceable against defendants as one.

Having reached this conclusion, this opinion might here end.    But, as the case was fully argued in another aspect, it is deemed admissible to go further.

Supposing it to be admitted that the provision in the grant is susceptible of being understood in a promissory sense, and is capable of being considered as in the nature of an agreement by the defendants with the complainant, is it capable of specific enforcement by the court?    Setting aside the objection founded on public policy, which is not examined, are the requirements in the writing of *such a nature, and so fully and clearly marked out, defined, identified, or indicated,* as to make specific execution by the court practicable?    We had occasion in the recent case of *Buck v. Smith, 29 Mich., 166,* to submit some observations respecting the power and duty of the court to execute agreements for the performance of an indefinite number and variety of future acts within the scope of a business not distinctly and exactly mapped out and particularized, and what was there stated has some application here.

The jurisdiction of equity in specific performance proceeds on the supposition that the parties have not only agreed, as between themselves, upon very material matter, but that the matters so agreed on are of such a nature, and the subjects of enforcement so delineated or indicated, either directly or by reference to something else, or so raised to view by legitimate implication, that the court can and may collect, and in their proper relations, all the essential elements, and proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed.

If, however, it appears, either that the things to be performed are in their nature incapable of execution by the court, or that needful specifications are omitted, or that material matters are left by the parties so obscure or undefined, or so in want of details, or that the subjects of the agreement are so conflicting or incongruous, that the court can not say whether or not the minds of the parties met upon all the essential particulars, or if they did, then can not say exactly upon what substantial terms they agreed, or trace out any practical line where their minds met, the case is not one for specific performance.

As the court does not make contracts for parties, so it never undertakes to supply material ingredients which they omit to mention, and which can not be legitimately considered as having been within their mutual contemplation. And where the party to perform is left by the agreement with an absolute discretion respecting material and substantial details, and these are therefore indeterminate and unincorporated until by his election they are developed, identified, and fixed as constituents of the transaction, the court can not substitute its own discretion, and so by its own act perfect and round out the contract. If the court were to do this, it would be to assume a right not belonging to it, but one which the parties reserved to themselves.

Now what is it that the complainant in this cause asks the court to execute?

It is—*First*, that defendants shall make and maintain on the premises *a* depot or station-house, *suitable for the convenience of the public.*

*Second*, that *during all future time, when trains run on the road*, at least *one train each way shall every day stop thereat;* and

*Third*, that in all *future time freight and passengers* shall be *regularly received* and *discharged* at such depot.

It is extremely plain that the requirements for stopping trains and receiving and discharging freight and passengers were leading objects, and that the building a station-house was of secondary consideration. The putting up of such a building could be of little consequence if no trains stopped there. The other requirements should therefore be regarded as the chief subjects of complainant's equity.

Supposing all other objections removed, is it practicable for the court to execute them? May it take upon itself for all the future to supervise the daily running and stopping of trains, both for passengers and freight, and the regularity of action in regard to the reception and discharge of passengers and freight?

If the writing embodies any promissory agreement at all, it is that when and so long as trains *run on the road*, one train each way shall *every day* stop at this place, and also that passengers and freight shall be there *regularly received* and *discharged.*

Waiving all considerations of possible future action by government under the postal, war, police, or other power, inconsistent with any particular decree which might now be made, can the court see that in all coming time these requirements are carried out? Can it know or keep informed whether trains are running, and what accommodations are suitable to the public interest? Can it see whether the proper stoppages are made each day? Can it take notice, or legitimately and truly ascertain from day to day, what amounts to *regularity* in the receipt and discharge of passengers and freight? Can it have the means

of deciding at all times whether the due regularity is observed? Can it superintend and supervise the business, and cause the requirements in question to be carried out? If it can, and if it may do this in regard to one station on the road, it may with equal propriety upon a like showing do the same in regard to all stations on the road, and not only so, but in 'regard to all stations on all the present and future roads in the state.

That any such jurisdiction is impracticable, appears plain, and the fault lies in the circumstance that the objects of the parties, as they were written down by them, are by their very nature insusceptible of execution by the court.

In this connection we may refer to a few cases. *Raynor v. Stone, 2 Eden, 128*, was a case for specific performance of several stipulations by the defendant in a lease. Among others, were agreements to mend hedges and fences, and keep the mansion house and other buildings in repair. The defendant having demurred, *Lord Northington* allowed the demurrer, and in the course of his opinion observed, that the remark of counsel, that he had no officer to see to performance, was very strong. "How," he remarked, "can a master judge of repairs in husbandry? What is a proper ditch or fence in one place, may not be so in another. How can a specific performance of things of this kind be decreed? The nature of the thing shows the absurdity of drawing these questions from the proper trial and jurisdiction."

In *Gervais v. Edwards, 2 Dru. & W., 80*, specific performance of an agreement between the parties for straightening a crooked river which divided their lands was sought, and the contract contained stipulations for mutual compensation for the soil which might be shifted from one to the other, and in regard to the contingent damages which might afterwards happen. The complainant waived all right on his part to future and contingent damages. The chancellor, *Sir Edward Sugden* refused to decree perform-

ance, however, and some of his observations are so explicit and appropriate, that a somewhat extended quotation will not be deemed objectionable.    He said, "As far as the merits of the case go, I would decree the specific execution of this contract; but I do not see how it is possible.    If I execute it at all, I must execute it *in toto*; and how can I execute it prospectively?    The court acts only on the principle of executing it in *specie, and in the very terms in which it has been made;* therefore, when you come to the specific execution of a contract *containing many particulars, you must see that it is possible to execute it effectively.* The court cannot say that when *an event arises hereafter, it will then execute it.*    In the case of a decree for the execution of a contract for the sale of timber, it is no objection that it is to be cut at intervals; that is certain, and there mere delay will not prevent the court from executing it; there the agreement is executed in specie; the court decrees to one the very timber contracted for, to the other the very price.    If I am called on now to execute this agreement, I can only specifically execute a portion; *whereas I am bound to execute it all.*"    He afterwards added, "No precedent has been cited; but, indeed, none is necessary. It is a question of principle; and I am clearly of opinion that if I gave a decree now, it would not be a specific execution of the contract, but only a declaration *that there ought to be a specific execution of it hereafter.*    I must therefore leave the plaintiff to his remedy at law."

*Blackett v. Bates, L. R. 1 Ch. App., 117,* was where an award required that the defendant should execute to the plaintiff a lease of the right of such part of a railway made by the plaintiff as was on the defendant's land, the lease to be in the words set out in the award; and that the defendant should be entitled to run carriages on the whole line, on certain terms, and might require the plaintiff to supply engine power, while the latter should have an engine on the road; and that the plaintiff, during the whole time, should keep the entire railway in good repair.    Differences

having arisen about carrying out the award, a bill was filed for specific performance, which was demurred to generally, for want of equity.    In support of the demurrer it was pertinently observed by counsel that " whether if the *court had legislative power it would be desirable to make parties perform in specie all manner of contracts, was not then the question.*    That the *court* only decreed specific performance when it could dispose of the matter by an order capable of being enforced at once, and did not decree a party to perform a continuous duty extending over a number of years, but left the party to his remedy at law."    *Lord Cranworth* acceded to this view, and observed, " that the court had no means of enforcing the *performance of daily duties* during the term of the lease; that it could do nothing more than punish the party by imprisonment or fine, in case of failure to perform them, and might be called on for a number of years to issue repeated attachments for default."    He cited *Gervais v. Edwards* with approbation.

In *The Marble Company v. Ripley, 10 Wall., 339,* the court acted on the same principle.    The contract concerned the use and mode of enjoyment of a quarry, and contained particular stipulations as to the future rights and privileges of the parties.    Among other things, the court remarked, that " if performance be decreed, the case must remain in court forever, and the court to the end of time may be called upon to determine, not only whether the prescribed quantity of marble has been delivered, but whether every block was from the *right place,* whether it *was sound,* or whether it was of *suitable size or shape or proportion.*    It is manifest that the court cannot superintend the execution of such a decree.    It is quite impracticable, and it is certain that equity will not interfere to enforce part of a contract, unless that part is clearly severable from the remainder."    *The Port Clinton Railroad Company v. The Cleveland and Toledo Railroad Company, 13 Ohio St., 544,* is cited with approval.    Among other authorities which tend to illustrate the subject, see *Baldwin*

31 MICH.—8.

*v. The Society for the Diffusion of Useful Knowledge, 9 Sim.,
393; Hamblin v. Dinneford, 2 Ed. Ch., 529; De Reva-
finoli v. Corsetti, 4 Paige, 264; Sanquirico v. Benedetti, 1
Barb., S. C., 315; Dodd v. Seymour, 21 Conn., 476; Wa-
ters v. Taylor, 15 Ves., 10–25.*

Without going further in this view of the case, it is only
needful to say, that it seems obvious that the very nature
of the provision sought to be enforced is such as to render
the remedy impracticable.

But if this objection were not insuperable, there would
be still another in the want of details and lack of particu-
larity and specification.

The specific location is not given for the building, nor
is there any thing certain as to the *plan, size, shape, mate-
rials* or *arrangement* of the building. All this appears to
have been left, by the *assent of the parties,* substantially to
the judgment and discretion of the grantees.

The only specification, the only limit upon such judg-
ment and discretion, the parties saw fit to make, was that
it should be *suitable for the convenience of the public.* For
many purposes this might be considered definite enough.
It would be in a charter in which the end to be obtained
would be presented as the object of the legislature, whilst
everything in regard to details and means would be rightly
and purposely left to the company. But for a building con-
tract, or an agreement to be executed by the court, it is
not so.

If the court were to attempt to decree, what direction
could it give as *per contract,* in regard to the plan, size,
shape, materials, arrangement and cost? If what would
now satisfy the interest of the public were known, it might
guide as to the present size and arrangement; but it could
go no further. What is needful now may be otherwise in
time, and future changes in the state of the country or in
business may wholly disappoint all present calculations.
The public interest may require many alterations. But the

reference to the public convenience gives no clue whatever as to the materials, or in regard to other essential matters.

The other parts of the provision are also marked by similar difficulties; but it is needless to dwell upon them. Among many others we cite the following authorities as going to explain this feature of the case:—*McClintock v. Laing*, 22 *Mich.*, 212; *Tatham v. Platt*, 15 *E. L. & E.*, 190; *Harnett v. Yielding*, 2 *Scho. & Lef.*, 549; *Colson v. Thompson*, 2 *Wheat.*, 336; *The Boston and Maine Railroad v. Bartlett*, 3 *Cush.*, 224; *German v. Machin*, 6 *Paige*, 288; *McMurtrie v. Bennette*, *Har. Ch.*, 124; *Webb v. The Direct London and Portsmouth Railway Co.*, 1 *De G.*, *M. & G.*, 521, 9 *E. L. & E.*, 249; *Stuart v. The London and Northwestern Railway Co.*, 1 *De G.*, *M. & G.*, 721, 11 *E.*, *L. & E.*, 112, and comments on these cases in *Hawkes v. The Eastern Counties Railway Co.*, 1 *De G.*, *M. & G.*, 757, 15 *E. L. & E.*, 358, and in *H. L.*, vol. 5, 331; *The South Wales Railway Co. v. Wythes*, 1 *R. & J.*, 186, 5 *De G.*, *M. & G.*, 880, 31 *E. L. & E.*, 226; also 3 *Par. on Con.*, 354 et. seq.; *Fry on Spef. Per.*, *Chap.* 1, 3 and 4.

On this phase of the case, then, the difficulties are insurmountable.

The alternative request for an allowance of damages, or something in the nature of compensation by the court, must of course fail.

If the case stood upon any final ground which would permit such an appeal to the jurisdiction of chancery, it could not be justly sustained.

In the first place, the uncertainties and lack of details which mark the case, the want of land-marks, boundaries, and specifications, the absence of proper *data*, and the aptness of the subject for a jury, would induce the court to decline.—*Pratt v. Law*, 9 *Cranch*, 456; *Morss v. Elmendorf*, 11 *Paige*, 277; *Fry on Specif. Per.*, *ch.* " *Compensation*," §§ 813, 814; 3 *Par. on Con.*, 402, 403 and notes.

But again, if the writing is treated as a promissory un-

dertaking which is binding on the defendant, what it stipulates for is chiefly and mainly a series of daily acts to extend through all the future, *and a full and complete award,* which, according to the settled course of the court and the principles on which alone it intervenes, is the only *admissible one,* would be utterly impossible upon any *data* now afforded, or which can now be afforded.

So many changes of a nature to affect the question are not only possible but probable, that any attempt by the court to adjudge specific compensation in money, in lieu of performance for all future time of the requirements in the writing, would be wild and absurd. A partial award, one *for present damages,* would not only be futile, but would be an unwarranted departure from principle. The ground of equitable interference, or at least one ground, is, to do at once and in one case final and complete justice. The court always seeks to avoid piece-work determinations.

In the introduction to *Adams' Doctrine of Equity* it is said: "The equity for performance with compensation may be enforced by either the vendor or purchaser, but is of course more readily granted to the latter; in *either* case *the defect must be one admitting of compensation, and not a mere matter of arbitrary damages,* and the *compensation given must be really compensation for a present loss, and not indemnity against a future risk."—p. 68.* See also the body of the work, *p. 109, margin, and cases cited.*

For the reasons given the decree below must be affirmed, with costs.

The other Justices concurred.