JAMES J. BROWN v. JOHN BROWN.

*Specific performance.*

Specific performance of a parol contract will not be granted unless it is substantially the contract set forth in the bill and is clearly proved.

Appeal from Ionia. Submitted Oct. 25. Decided Jan. 11.

SPECIFIC PERFORMANCE. Defendant appeals. Reversed; bill dismissed without prejudice.

*W. W. Mitchel* and *T. F. McGarry* for complainant.

*Wells & Morse* for defendant.

GRAVES, C. J. This bill was filed May 11, 1876, for the specific performance of an alleged oral agreement relating to certain premises in the city of Ionia, and the court made a decree for performance. A claim was set up for an accounting but was waived on the hearing. The controversy is between two brothers and it dates several years back of the filing of the bill. For a particular understanding of the dispute and of the actual case to which the judgment of the court must be confined it is necessary to recur to the bill and answer after a few preliminary words by way of preface.

In 1865 the defendant owned two frame buildings and the ground they occupied fronting on Main street in Ionia,

and in that year the buildings were destroyed by fire. In 1866 the defendant put up a brick building on the west part of the lot, leaving vacant some fifteen feet frontage on the east, to which was appurtenant a right of way or passage of about two and a half feet. Adjoining this vacant piece on the east was an unoccupied strip of eight and a half feet in width then owned by Mr. Chiddester. The owner of the premises next east of this strip, Mr. Titus, in the next year, that is 1867, proceeded to put up a brick building. There consequently remained unoccupied by any erection the strip belonging to the defendant and the adjoining one eight and a half feet wide belonging to Mr. Chiddester, and if that space were to be built up the line of buildings would be unbroken and continuous. The side walls of the other buildings could be made available as far as they went back and the expense be thereby lessened.

In this state of things these parties in the year last mentioned proceeded as the bill states to enter into an oral contract by which the complainant was to buy the eight and a half feet next to Titus and then construct on the two parcels a two-story brick building with a basement. That the defendant thereupon should use and enjoy said building and have the rents and profits until such use and rents and profits should equal the value of the strip of ground and premises still in his ownership, such value being fixed at $70 per foot frontage for 17 feet, (or the round sum of $1190,) and then on the occurrence of that result should convey to complainant the last-named parcel with all rights of way and passage and of party wall appurtenant.

The bill goes on to aver that relying on such agreement the complainant immediately purchased the Chiddester strip and paid for it $610 and also acquired of Titus at large expense a party-wall right, and in accordance with said agreement proceeded and caused to be erected and constructed a two-story brick building eighty feet deep with basement under it and extending over both pieces of land, at an expense of $3015. That immediately on the erection and construction of the building by complainant and as soon

as it was fit for use the defendant went into possession and has ever since had the exclusive control and the entire use and enjoyment and has received all the rents except $150 which complainant received and applied in fitting up the basement. That the value of said use and the rents and profits actually received by the defendant have far exceeded the agreed price of $1190. That about two years prior to the bill and after defendant had received in rents and profits more than sufficient to satisfy the consideration mentioned the complainant demanded of defendant a conveyance in compliance with the agreement and the defendant utterly refused.

The statements of the answer are wholly different. The defendant there admits that he requested complainant to buy the Chiddester strip but denies that it was purchased for the purpose or in the manner set forth in the bill. He avers and insists that it was bought in complainant's name for the defendant and in trust for him and that the money used therefor was in part furnished by complainant and in part by defendant, and that defendant has since paid complainant every dollar he so advanced with the interest added, and that said strip, although now standing in complainant's name, is in equity the defendant's property.

The answer distinctly denies that the parties contracted as claimed in form or substance and avers that the only agreement made in reference to the building was that the complainant would from time to time advance moneys to be used in the erection and completion of it, of which an account should be kept; that such advance should be a loan from complainant to defendant without security and be repaid with interest. That defendant put up the building and mostly with his own means. That complainant during the early part of the work did loan to defendant about six or eight hundred dollars in money and materials, and then absolutely refused to lend any more, and that defendant thereafter and long prior to the filing of the bill actually paid to complainant all of such advances and also the entire amount the latter laid out for the eight and a half feet

together with interest on the whole, and now holds his receipt for the same. That the right of party wall acquired from Titus was obtained for defendant under the same arrangement that was made for getting the eight and a half feet and subject to the like trust, and that defendant has paid complainant the whole advance therefor and is in equity entitled to a conveyance covering the right.

The foregoing statements exhibit the case made by the bill and the response thereto by the answer. Each party verified his statement by his oath and gave to it whatever title to credence that solemnity could bestow.

The complainant sets up his equity as a right to have the defendant carry out by conveyance an alleged unwritten agreement between the parties, which, as complainant avers, he has fully performed on his part. The defendant denies making the alleged contract and contradicts the claim of performance. He also sets forth his own explanation of the transaction to which the litigation applies. Whether what is described in the bill as the contract to be enforced possesses the attributes of certainty which are requisite to justify any attempt by the court to execute it is a question which may be waived. As the case stands on the record no discussion of that point is necessary.

The question whether in fact the parties actually contracted as alleged, and in case they did so, then whether the complainant performed his part of it, depends on their testimony. Beyond that there is nothing which is much to the purpose. The mass of matters from other sources consists of surrounding incidents which are open to different constructions and various inferences and only adapted to explain and brace up a case already clearly marked out by other means. The first thing is therefore to extract from the scattered explanations of the parties their versions of the transaction.

The complainant on going on the stand to support the allegations of his bill testified that the agreement was that he should buy the Chiddester strip, and acquire from Titus the right to use and have the benefit of his wall, and should

then go on and construct a building covering the two parcels and extending to and including the half of the wall of defendant's building abutting on the seventeen feet; and that thereupon the defendant should occupy the building long enough to pay him for the seventeen feet including the half of the wall at $70 per foot front. That nothing was said as to the time when the upper story should be finished nor in regard to the way or style. But subsequently it was agreed that it should be done out of the rents obtained from that portion of the building. That pursuant to the original understanding the complainant purchased the Chiddester part and the interest in the Titus wall, and the putting up of the building was begun. That both parties took part in working about it and directing the work and in providing money and material, but that whatever money was paid by defendant was provided by complainant. That after going on awhile and prior to the completion of the building the complainant ceased to supply means because his money had failed. The portion above the first floor was wholly unfinished and complainant is not informed whether it is yet completed. That the building was in a condition to be occupied in part in the month of November, 1867, and was in fact taken possession of at that time by defendant. That some time prior to the bill the defendant had been long enough in possession to realize sufficient to complete the building and also pay him the agreed price for his portion. The testimony of complainant is susceptible of no more favorable construction than is here given, and it is not certain that too much has not been made of it.

When sifted from other matters the defendant's version seems to be substantially as follows: That he told complainant to buy the Chiddester piece, whereby a parcel would be provided, by joining defendant's strip of fifteen feet or thereabouts, very desirable for a building site. That defendant would put in his strip at $75 or $80 per foot front. That complainant should go on and construct with his own means in a certain time a building covering the two parcels and that defendant should then hold the property until satis-

fied out of the rents for his parcel. That this was the original understanding. But subsequently it was arranged that complainant might have half of the wall of the building adjoining, which had been put up the year before. That it was not however agreed that this was to be at the same rate as the vacant land. That it was an independent matter. That the wall in question cost from $700 to $800. That both parties lent their aid in commencing the work, and respectively furnished money and materials. But when it had proceeded only far enough to get the roof on and the floor laid in the lower story and some of the plastering done then the complainant refused to pay more money, because, as he said, he had none. And he thenceforward paid nothing more unless perhaps he honored some few orders drawn or made by defendant on his store for goods. That he substantially abandoned the undertaking and left the whole thing on defendant's hands. That the latter resorted to his own means, which he desired to employ elsewhere, and continued the work until the building was so far advanced that a valuable portion of it was tenantable, and from thence retained the possession. That it was only partly constructed when complainant withdrew his aid, and the upper part was only finished the 24th of July, 1873, and that no arrangement as claimed by complainant for delaying the completion of the upper portion and finally doing it at last out of the rents was ever made. That the parties subsequently settled concerning what complainant put in, and defendant paid him therefor. But the cost of the eight and a half feet bought from Chiddester was not taken into the account. That defendant considered that complainant was already paid for that by rents which the latter had collected for defendant on other property and had retained.

It is barely needful to compare the sworn statements in the bill and answer and the sworn statements made upon the stand to see quickly that the parties as between themselves very seriously disagree. as well in their pleadings as in their testimony in most important particulars; but moreover that in giving in his sworn allegations and in testifying as a

witness each party in very essential respects most gravely differs from himself. It would be a fruitless task to follow their blind and crooked ways in order to strike a balance somewhere and ascertain to what limit and when and to whom it would be naturally safe to extend judicial credence and belief. The complainant has given a personal reason for a portion of his own discrepancies, but it is not a cause well suited to inspire a latitude of confidence even in those instances in which as we are told it did not exist. But independently of this reason there is room for thinking that a share of the confusion and contradiction which appear are owing to reasons which neither party has felt willing to disclose.

The correct doctrine in this class of cases was tersely yet accurately laid down in *Wilson v. Wilson.* The court said: "Not only must the contract, when resting in parol, be proved in the clearest manner, but it must be substantially the same set forth in the bill." 6 Mich. 9. Both branches of the proposition are here applicable. While there is more or less testimony to show that a contract existed it falls far short of clear proof of the thing or things agreed upon. So far as it merits credence it fails to elucidate terms and develop outlines and no one can gather from it any certain idea as to what was understood. Again, if the showing made by complainant, when his own witness, is accepted, it is far from being in substantial accordance with his bill. By the contract as there set forth it bound the complainant to make and finish the entire building in a reasonable time and without the aid of any means from defendant, and he alleged full performance. But according to his own testimony the contract provided among other things that completion of the upper part of the building should be delayed and not be done by himself nor with his means; but by defendant and out of the rents. And he swore that he did not fully construct the building and had no knowledge whether it was yet finished. It is needless to specify all the disparities.

Why it was that both parties, as they admit, contributed

.means and services at the very commencement we do not know. It would not seem consistent with the case now described by either, and no plausible explanation appears. Doubtless reasons existed for the methods pursued which are not divulged. For other cases having a decided bearing see *Van Wert v. Chidester* 31 Mich. 207; *Craig v. Bradley* 26 Mich. 353; *Thayer v. Lane* Walk. Ch. 200; *Jerome v. Hopkins* 2 Mich. 96; *Bomier v. Caldwell* 8 Mich. 463; *Wurcherer v. Hewitt* 10 Mich. 453; *Peckham v. Buffam* 11 Mich. 529; *Dunn v. Dunn* 11 Mich. 284; *Moran v. Palmer* 13 Mich. 367; *McClintock v. Laing* 22 Mich. 212; *Wright v. Wright* 31 Mich. 380; *Ritson v. Dodge* 33 Mich. 463; *Kinyon v. Young* 44 Mich. 339; *Kendall v. Almy* 2 Sumn. 278; *Smith v. Burnham* 3 Sumn. 435.

It is not improbable that complainant holds rights in the property of which he cannot be deprived, but if he does he has not established by this litigation any claim to relief.

The decree ought to be reversed and the bill dismissed but without prejudice.

The defendant will recover his costs of both courts.

The other Justices concurred.