BATTJES *v.* MICHIGAN TRUST COMPANY.

1. SPECIFIC PERFORMANCE—TERMS OF CONTRACT—EVIDENCE.
    In order that courts may specifically enforce a contract for the
    sale of shares of stock the plaintiff must establish by clear,
    satisfactory and convincing proof the terms of such agreement.

2. SAME—TERMS OF CONTRACT.
    The jurisdiction of equity in specific performance proceeds on
    the supposition that the parties have agreed upon every material
    matter, that such matters are of such a nature and the subjects
    of enforcement so delineated or indicated either directly or by
    reference to something else, or so raised to view by legitimate
    implication, that the court can collect all essential elements in
    proper relation and carry into execution the things agreed on
    and standing to be performed.

3. SAME—COURT WILL NOT MAKE NEW CONTRACT OR SUPPLY OMIS-
    SIONS.
    Equity cannot make a new contract for the parties and will not
    supply any material stipulation thereof but must specifically
    enforce the contract according to its terms or not at all.

4. SAME—UNEXECUTED ESCROW AGREEMENT.
    Plaintiff was not entitled to specific preformance of contract for
    sale of stock in a corporation where contract contemplated the
    making of an escrow agreement relating to matters of vital
    importance to defendants and such escrow agreement is not
    yet executed.

5. SAME—SALE OF CORPORATE STOCK—PARTIES—RELEASES—CONDI-
    TION PRECEDENT.
    Plaintiff purchaser of stock of corporation, of which he was al-
    ready a stockholder, *held,* not entitled to specific performance
    of contract for sale of stock to him where execution of releases
    by corporation of claims it had against defendant stockholders
    was a condition precedent to the selling of the stock upon terms

and at the price named, such releases were never executed and the corporation, not a party to the contract of which specific performance was sought, had never agreed to execute them.

Appeal from Kent; Souter (Dale), J. Submitted January 14, 1948. (Docket No. 69, Calendar No. 43,971.) Decided April 5, 1948.

Bill by Dewey D. Battjes against Michigan Trust Company and others for specific performance of an agreement to sell stock. Bill dismissed. Plaintiff appeals. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*Warner, Norcross & Judd (George S. Norcross* and *Harold S. Sawyer, Jr.,* of counsel), for defendants.

SHARPE, J. This is a suit for specific performance of a contract for the sale of 3,975 shares of stock of the Grand Rapids Gravel Company.

The Grand Rapids Gravel Company was organized about 1919. The original stockholders were plaintiff, Dewey D. Battjes, his father, Nicholas Battjes, his brother, Henry N. Battjes, and W. J. Breen. The company is engaged in producing sand, gravel and mixed concrete. Henry N. Battjes died in 1944. The Michigan Trust Company and Jessie F. Battjes were appointed coexecutors of his estate. There are outstanding 8,450 shares of stock in the company, of which plaintiff and his family own 2,850 shares. Plaintiff, being desirous of owning a majority of the shares of stock in this company, entered into an agreement with other stockholders for the sale of 3,975 shares of stock.

The agreement entered into reads as follows:

"December 28, 1945.

"Mr. Dewey D. Battjes
Grand Rapids, Michigan
"*Dear Sir:*

"The estate of Henry N. Battjes, deceased, The Michigan Trust Company and Jessie F. Battjes, coexecutors, Nicholas H. Battjes, John M. Battjes, Bette L. Battjes and Jessie F. Battjes, individually, offer you for prompt acceptance for purchase certain of the stock and other assets of the foregoing individuals and/or the Estate of Henry N. Battjes, as follows:

"1. 3,975 shares of the common capital stock of Grand Rapids Gravel Company at a price of $40 per share.

"Note: The avails of the purchase of this stock to be deposited in escrow with the Old Kent Bank as escrow agent, under an appropriate escrow agreement providing that the same shall be held until such time as a final decision shall be arrived at respecting the alleged claim of the United States Treasury Department (Bureau of Internal Revenue) based on a further examination of the returns being made by the special agent of the bureau for the years 1936 through 1944 with particular reference to the deductibility of certain salaries paid, and with an agreement that the shares of stock of Grand Rapids Gravel Company herein agreed to be sold shall bear their pro rata share of any such tax claim and costs and charges incurred and paid in the reasonable and proper defense of such a tax claim and that the purchase price of $40 per share shall thereupon be adjusted accordingly. Certified public accountant figures prepared and furnished by Ernst & Ernst, certified public accountants, to govern.

"2. All shares of Battjes Sand & Gravel Company held and/or owned by any of the foregoing parties at the price of $30 per share.

"3. All shares of any and all of the foregoing parties in La Mar Oil Company at the price of $15 per share.

"4. As a condition precedent to selling the foregoing stock upon the terms and at the price named, you are to agree in your own behalf and on behalf of Grand Rapids Gravel Company (appropriate action of the board of directors to be taken to effectuate such agreement) that Grand Rapids Gravel Company will properly, after the consummation of this agreement, pay to Jessie F. Battjes as royalty for gravel and/or sand removed from certain of her premises located in Wyoming township, Kent county, Michigan, during the year 1944, the sum of $5,000; for gravel and/or sand removed from said premises during the year 1945, the sum of $7,100 and that Grand Rapids Gravel Company will purchase said lands and any and all remaining gravel and/or sand deposits located therein at the sum of $3,550 upon delivery to said company of a good merchantable warranty deed conveying title to said premises.

"5. It is understood by all parties hereto that the 3,975 shares of the common capital stock of Grand Rapids Gravel Company proposed to be sold includes 700 shares of said stock now standing in the name of Gerald J. Rocks, Libbie Rocks, Roy Peets and Elizabeth Peets. Purchaser agrees that if the sellers are unable to deliver said 700 shares of the capital stock of Grand Rapids Gravel Company that he will release the sellers from any and all liability so to do and will exercise his rights and purchase all remaining shares now standing in the name of the sellers or any of them.

"6. That on the consummation of the transaction, that you will execute in your own behalf and cause Grand Rapids Gravel Company, a corporation, to execute, pursuant to appropriate action of its board of directors, a full and complete release to the estate of Henry N. Battjes, deceased, Jessie F. Battjes,

individually, and/or as survivor of herself and Henry N. Battjes, deceased, and/or the executors, administrators, heirs at law, devisees, legatees and assigns of Henry N. Battjes, deceased, releasing them and any of them from any and all claims which you individually, or as a stockholder of Grand Rapids Gravel Company, and Grand Rapids Gravel Company, a corporation, now have, or may hereafter have by reason of any claim or demand, liquidated or unliquidated against the said Henry N. Battjes and the foregoing.   *   *   *

"I hereby accept the foregoing proposal.

"/s/ Dewey D. Battjes."

During his lifetime and while president of the Grand Rapids Gravel Company, Henry N. Battjes purchased two parcels of gravel-producing land. Title to these parcels was taken by himself and his wife, Jessie F. Battjes, as joint tenants. Prior to and after the death of Henry N. Battjes, plaintiff threatened to bring an action on behalf of the corporation to recover the sum of $300,000 as the value of these parcels of land. Following the death of Henry N. Battjes, the gravel company entered upon these two parcels of land and commenced taking gravel without the authority of Jessie F. Battjes, as survivor of herself and her husband. It also appears that the United States government has asserted a claim against the gravel company for wrongful withdrawal of salaries by its officers from 1936 to 1944, which has been estimated to be approximately $400,000.

Shortly following the execution of the contract of December 28, 1945, the parties entered into negotiations to formulate an escrow agreement. Each of the parties prepared proposed agreements but each agreement submitted was rejected by the opposite party. About May 1, 1946, the executive committee

and the board of directors of the Michigan Trust Company held a meeting and determined that the formulation of an escrow agreement acceptable to all parties was impossible. Pursuant to this determination a letter was addressed to plaintiff cancelling the contract of December 28, 1945. On August 1, 1946, plaintiff began the instant suit. On September 13, 1946, a special meeting of the directors of the Grand Rapids Gravel Company was held at which time an attempt was made to procure a resolution from the board of directors of the corporation as required by paragraph 4 of the contract. This attempt was unsuccessful.

The cause came on for trial and at the conclusion of all evidence the trial court entered an order dismissing plaintiff's bill of complaint. In a written opinion the court said:

"As appears from the findings of fact and conclusions of law proposed by defendants and adopted by this court, the parties hereto agreed to enter into an 'appropriate escrow agreement;' that after months of negotiation they were unable to agree upon the terms and provisions of such an agreement. This 'escrow agreement' was an important and material item, and failure of the parties to complete their contract in this regard makes it impossible for this court to decree specific performance."

Plaintiff appeals and urges that it is not necessary for the court to make a contract for the parties as the provisions in the agreement of December 28, 1945, relative to the escrow agreement are complete; that the one purpose of the escrow agreement was to leave the money with the Old Kent Bank as security for the proportionate share of any tax claimed, plus costs and expenses; and that the parties never contemplated that action under paragraph 4 was a condition precedent.

Defendants urge that a contract which is incomplete or dependent upon the execution of a collateral or supplemental contract upon which no meeting of minds has ever occurred cannot be specifically enforced; and that defendants are under no duty to perform the contract of December 28, 1945, in the absence of timely performance of the express condition precedent by plaintiff.

The record shows that no appropriate escrow agreement was ever accepted by all parties interested. The points upon which differences arose are: The time when the escrow agreement would terminate; the kind of protection to be provided against the diminution of corporate assets until the amount of the United States government claim is determined and the claim satisfied; and the source of the funds from which payment of the purchase price into the escrow agreement would be made by plaintiff.

In *Steketee* v. *Steketee*, 317 Mich. 100, 105, we said:

"In order that courts may specifically enforce an oral agreement to convey property, plaintiff must establish by clear, satisfactory and convincing proof the terms of such agreement.

"In *Czeizler* v. *Radke*, 309 Mich. 349, 357, we quoted with approval from *Blanchard* v. *Railroad Co.*, 31 Mich. 43 (18 Am. Rep. 142), as follows:

" ' "The jurisdiction of equity in specific performance proceeds on the supposition that the parties have not only agreed, as between themselves, upon every material matter, but that the matters so agreed on are of such a nature, and the subjects of enforcement so delineated or indicated, either directly or by reference to something else, or so raised to view by legitimate implication, that the court can and may collect, and in their proper relations, all the essential elements, and proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed." ' '

"We also quoted with approval from 49 Am. Jur. pp. 35, 36, § 22, as follows:

" ' "Whenever it appears that material matters are not clear, certain and complete, but are left by the parties so obscure or undefined that the court cannot say whether or not the minds of the parties met upon all the essential particulars, or if they did, the court cannot say exactly upon what substantial terms they agreed, the case is not one for specific performance. Equity cannot make a new contract for the parties, but must enforce the contract according to its terms or not at all; the court will not make a contract for the parties or supply any material stipulation thereof." ' "

In our opinion the time when the escrow agreement would terminate and the management of the corporation during the continuance of the escrow agreement were matters of vital importance to the defendants. These questions were to be settled in the escrow agreement, but were never agreed upon. Until all matters referred to in the agreement of December 28, 1945, were settled and adjusted between the parties, plaintiff is not entitled to specific performance of the contract.

There is also an equally compelling reason why specific performance cannot be granted. Under paragraph 6 of the agreement the Grand Rapids Gravel Company was to release all claims that the corporation has or may have against the estate of Henry N. Battjes and Jessie F. Battjes, the widow, by reason of the purchase of certain gravel lands purchased in the name of Henry N. Battjes and wife. The Grand Rapids Gravel Company was not a party to the agreement and never has agreed to effectuate such a release. Such a release to the estate and to the widow was important and was a condition precedent to the selling of the stock upon the terms and at the price named.

The decree of the trial court is affirmed, with costs to defendants.

BUSHNELL, C. J., and BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred with SHARPE, J.

DETHMERS, J. (*concurring*). I concur in the result for the second reason advanced in Mr. Justice SHARPE's opinion.