GEORGE L. FOX, WILLIAM E. FOX AND EDWARD BRENNAN
v. DAVID R. PIERCE.

*Right of way—Certainty in pleadings and proofs.*

Courts will not, unless in clear cases, establish and protect a way for passage over private property on the ground of enforcing specific performance of a partly executed oral agreement, or of declaring and protecting a prescriptive right resulting from a use which originally sprang from such an agreement.

A right of way that is too indefinite for a determinate description cannot be established and protected by a court of chancery.

Complainant in equity must so state his case in his bill that if admitted by answer or proved at the hearing the court can decree upon it.

A bill to establish a right of way and to enjoin encroachments upon it cannot be sustained where it does not furnish the means for declaring exactly what the right is and the precise locality which it occupies with the shape and dimensions thereof, and where the proofs show nothing but an oral agreement for its establishment, and such occasional variations in the bounds of the locality as to make it impossible to determine where it originally existed.

Appeal from the Superior Court of Detroit. (Chipman, J.)
April 17.—June 6.

INJUNCTION. Complainants appeal. Dismissal affirmed.

*James O'Brien* and *Conely, Maybury & Lucking*
for appellants. When an easement has been used for
twenty years or more under a claim of right, although such
right was originally gained by an oral grant, such user
would be sufficiently adverse to gain a prescription thereby,
or where used without asking leave, and without objection,
for the requisite time, it cannot afterwards be disputed:
Washb. Easements 187; Goddard on Easements 115; *Cheever
v. Pearson* 16 Pick. 272 ; *Stearns v. Jones* 12 Allen 584;
*Blake v. Everett* 1 Allen 248 ; *Garrett v. Jackson* 20
Penn. St. 331 ; *Pierce v. Cloud* 42 Penn. St. 113 ; *Church
v. Burghardt* 8 Pick. 327 ; *Monmouth Canal Co. v. Har-*

*ford* 1 C. M. & R. 631; a verbal agreement as to land
when carried out and acquiesced in for a period of years
is binding and will be enforced: *Pratt v. Lewis* 39 Mich.
7, 11, 12; *Diehl v. Zanger* 39 Mich. 601; *Smith v. Ham-
ilton* 20 Mich. 433; *Joyce v. Williams* 26 Mich. 332; *Stew-
art v. Carleton* 31 Mich. 270; *Dupont v. Starring* 42 Mich.
492; where a parol agreement as to lands is entered into
and so far executed that the parties cannot be placed *in
statu quo*, a court of equity will decree specific perform-
ance of the agreement: *Cilley v. Burkholder* 41 Mich. 752;
*Scott v. Bush* 26 Mich. 421; *Bomier v. Caldwell* 8 Mich.
463.

*F. A. Baker* for defendant appellee. Prescriptive right
cannot be established by user if the identity of the thing
used is not established: *Corning v. Gould* 16 Wend. 531;
*Cotton v. Pocasset* 13 Met. 429; *Baldwin v. Calkins* 10
Wend. 167; *Davenport v. Lamson* 21 Pick. 72; *Killion v.
Kelley* 120 Mass. 47; *Richardson v. Pond* 15 Gray 387;
the character and extent of a way claimed by prescription is
determined by the user by which it is obtained: Washb.
Easements (3d. ed.) 117, 657; *Allan v. Gomme* 11 Ad. &
El. 759; *Atwater v. Bodfish* 11 Gray 150; *McCallum v.
Water Company* 54 Penn. St. 40.

GRAVES, C. J.   The complainants prayed the Superior
Court of Detroit, sitting in chancery, to find and declare
the existence of a permanent passage way on certain prem-
ises of the parties, and to enjoin the defendant from com-
mitting any encroachment or disturbance on it.   The case
was heard on bill, answer and evidence, and dismissed, and
complainants appealed.

An alley laid out by the Governor and Judges extends
from John R. street westerly for several yards where
it narrows to a point and terminates between Madison and
Adams avenues.   The passage way in question is alleged to
be a narrow way engrafted on this alley as a continuation,
and running westerly several feet but having no opening at
the west.   The block is bounded on the east and west by

John R. and Williams streets and on the north and south
by Adams and Madison avenues.   In 1851 William Chapo-
ton owned lots 24 and 25 and the east half of lot 23 in the
block and James Brennan, now deceased, owned lot 18 and
the east half of lot 19.   The Chapoton property fronts to
the south and on Madison avenue, and the Brennan property
to the north and on Adams avenue, and the opening or pas-
sage way in dispute is on the rear of the two properties.
The complainant Brennan is the successor in estate of James
Brennan and holds his title.   The complainants Fox and the
defendant Pierce hold under mesne conveyances from
Chapoton, the premises of Fox being the east twenty-five
feet of lot 23 and the west thirty-four feet of lot 24, and
those of Pierce being the east twenty-six feet of lot 24 and
the west three feet of lot 25.

A schedule marked " A " and made a part of the bill is
alleged to be a correct representation of the block and lots
and of the alley made by the Governor and Judges and of
the passage or opening appended to it which is here in con-
troversy ; the latter being colored red.*

The controverted passage referred
to in the opinion as colored red, is here
represented by the irregular black patch or
cul-de-sac in which the alley closes.

After referring to this schedule the complainants state, on information and belief, that said alley so opening out of John R. street and running westerly to a point lying between lots 19 and 24 as shown on said plat has existed as it now is for the space of twenty-five years and upwards ; that they know that it is at least seven and a half feet wide throughout its entire length ; and are informed and believe it has been so for upwards of twenty-five years ; "that said alley way extends in from John R. street as shown on said schedule A up to the land of your orators Fox and also to and adjoining on the southerly side the land of your orator Edward Brennan as herein before described."

It will be observed that this statement refers to the alley made by the Governor and Judges and to the appendix claimed to be an extension as a single continuous way.

The complainants further state on information and belief that *said* alley was not laid out originally as it exists and has existed for the last twenty-five years ; but about the year 1851 said William Chapoton and James Brennan, the predecessors in estate of these parties, " agreed to open said alley where colored red (alluding to a red space on the schedule intended to suggest the form and location of that part which is in dispute and which is claimed to be a continuation of the alley proper) as it now lies, and has existed since that time, and to leave the same open forever thereafter as such alley or right of way ; and they did thereupon open said alley to its present width and proportions, and it has so existed ever since, and the said Brennan and Chapoton, having so agreed as aforesaid and opened said alley, built their respective fences on the lines of said alley and left the said alley or right of way open for the use of each other and their heirs and devisees."

The bill contains nothing descriptive of the alleged right or of the locus in quo beyond these statements and what is represented by the schedule. These statements in the bill concerning an agreement between Chapoton and Brennan to open a passage way, and in regard to the opening of it, and in relation to its extent, width and shape and use are

disputed by the answer. The answer also insists that no right of way not revocable at defendant's will pertains to his premises.

Unless the case is a clear one it is not the province of the court to establish and protect a way for passage either on the ground of enforcing specific performance of a partly executed oral agreement or on that of declaring and protecting a prescriptive right resulting from a use which originally sprang from such an agreement. Does this record disclose such a case ? Does the bill state one ?

Now a right of way which is too indefinite for a determinate description is too indefinite to be established and protected by the court of chancery. Assuming that the right which is actually in controversy, or rather the right which complainants contemplate, to be capable of such a description, the rule then applies that the complainant must so state his case' that if admitted by answer, or proved at the hearing, the court can decree upon it. Has that been done ? Are the means given to enable the court to declare in its paper decree exactly what right of passage exists, and of what shape and dimensions the place is, and precisely where it is located with reference to lot lines and permanent erections ?

These questions suggest serious difficulties. It would not do to recognize any other mode or kind of use than such as can be justified by the actual state of things, nor would it be allowable to locate the way or any part of it, whatever the shape, on the land of third persons or separate from the site to which it actually belongs. But suppose these difficulties to be waived. How is it with the evidence? How does that compare with the bill, and what effect has it towards making out a case capable of being decreed ?

The fact is proved that about 1851 and during the before mentioned ownership of Chapoton and James Brennan, they agreed orally to appropriate equal portions from their lands to widen to 10 feet the point of the alley laid out by the Governor and Judges, and to open from that point a passage way of that width to the west line of what is

now the Pierce property. And it also appeared that on the faith of that arrangement they actually opened a way between these limits which has never been wholly closed. The evidence tends to show further that Chapoton then surrendered five feet as his share or half and that Brennan undertook to surrender an equal quantity for the same purpose, but that his actual contribution was probably less. There is also evidence that certain structures were put up at different times, of which some were placed on the line fixed for the way and the others on or near the line of the way as it came to be used, and that the space or opening has here and there varied in width at different times, and moreover, that the entire strip is now further south, to the extent of a portion of its own width, than formerly. The estimated width for different times and at different points, as given by witnesses, ranges from twelve feet to six and a half. As to the changes of width and position which seem to have occurred and as to when and where and to what extent there have been expansions or contractions, and as to the present shape, width and location of the opening as it exists on the ground in relation to the lines of the parties, the alley laid by the Governor and Judges, and the situation of contiguous permanent erections, there is substantially no evidence.

What then is the result? It seems too plain for controversy that no case can be gathered from the bill that the evidence would support, and on the other hand the proofs themselves appear to be too ambiguous, uncertain and indeterminate to afford the necessary data for a favorable decree. In this aspect the difficulty is much the same that is seen in cases for specific performance of unwritten agreements where the description of the property or other material parts are either too uncertain in themselves or too uncertain under the evidence, which amounts there to the same thing, to enable the court to extend any relief. *Brown v. Brown* 47 Mich. 378; *King v. McCully* 38 Penn. St. 76. No more can be drawn from the facts than they contain.

Under this conclusion the other questions · are devoid of practical importance.

Decree affirmed with costs.

COOLEY and CAMPBELL, JJ. concurred.