### SIEGEL *v.* SHARRARD.

1. MORTGAGES—EQUITY—EVIDENCE.

> Equitable lien, amounting to a mortgage *held,* established in plaintiff's favor under written memorandum indicating plaintiff had a mortgage interest in property received by defendant in exchange for property upon which plaintiff held mortgage although deed of defendant's newly-acquired property ran to plaintiff.

2. PAYMENT—PRESUMPTION OF REASONABLE TIME.

> Where no time for payment is stated in a contract, the law will presume a reasonable time.

3. EQUITY—MORTGAGES—ACCOUNTING—FORECLOSURE—POSSESSION.

> Plaintiff who had been mortgagee of property owned by defendant and who transferred part of lien to property exchanged therefor but had deed run to plaintiff instead of defendant although former who paid incumbrances on land received recognized latter's rights for period of six years during which time defendant made no payment, *held,* entitled to equitable mortgage, accounting and foreclosure but not to further possession until expiration of period of redemption.

Appeal from Wayne; Callender (Sherman D.), J. Submitted June 5, 1936. (Docket No. 81, Calendar No. 39,028.) Decided September 2, 1936.

Bill by Herbert C. Siegel against Calvin E. Sharrard for an accounting, to establish an equitable mortgage, for foreclosure of the same and for an injunction. From decree dismissing the bill of complaint, plaintiff appeals. Reversed.

*Schmalzriedt, Frye, Granse & Frye* (*Glenn C. Wilber, Jr.,* of counsel), for plaintiff.

*Edward A. Jacob,* for defendant.

BUTZEL, J. Plaintiff and defendant are both elderly men who had been acquainted with one another some 50 years. Plaintiff conducted a music store, made loans and collections, had been a licensed real estate dealer and was president of the Capac State Savings Bank of Capac, Michigan. Defendant was a farmer. Plaintiff loaned defendant the sum of $6,000, which was secured by mortgages on defendant's farm in Riley township, St. Clair county, a house and some land in Berville, Michigan, and also on certain stock and equipment on the farm. In July, 1925, the defendant was approached by a Mr. and Mrs. Robinson and a broker who offered to trade a house and lot valued by them at $6,500 and located on Lillibridge street, Detroit. Defendant thereupon consulted plaintiff in regard to the exchange. Defendant's indebtedness to plaintiff was figured up, plaintiff later giving defendant a check for $34.88 so as to bring the exact amount to $6,000. To effect the exchange, plaintiffs released defendant of $4,600 of the debt by taking a deed to the farm and giving the Robinsons a land

contract for the purchase of the farm for $4,600. Another $400 of the indebtedness remained secured by the Berville property. The remaining $1,000 was to be secured by the equity in the Detroit property defendant was acquiring. There were two prior mortgages on the property, one for $2,500 and another for $1,000. It was contemplated that plaintiff should take a third mortgage of $1,000, thus making the total amount of the mortgage $4,500, and if the property were of the value of $6,500, as claimed, defendant would have an equity of $2,000. Defendant did not intend to live in the Detroit property. It was believed that an advantageous sale could be made very readily and after some delay, a deed was given to plaintiff to simplify the transaction, he assuming the first two mortgages. One of them provided for monthly payments and interest at 7 per cent. per annum. The entire transaction was informal and carelessly handled. Although defendant gave plaintiff a deed to the farm in July, 1925, the Robinson deed was not executed until almost four weeks later. Evidently it was believed that a quick sale of the property would be brought about, a deed given by plaintiff to the purchaser, and defendant would be paid his equity from the proceeds. Defendant received from plaintiff an itemized statement showing how the $6,000 indebtedness was made up and that it was paid by the $4,600 contract, the $400 mortgage and ''by contract back on Robinson house and lot—$1,000.'' It also contained a further statement showing the house and lot stated to be valued at $6,500, that title was in plaintiff, that there were mortgages of $2,500 and $1,000 and plaintiff's claim of $1,000. Plaintiff told defendant that he gave him the statement so that he would have something to show his interest in the property.

Defendant collected the first month's rent, but directed or consented that the rent thereafter be paid to plaintiff, who was to take care of the prior mortgages, taxes and upkeep. The income from the property was insufficient to pay the expenditures and as the value of the property was receding, plaintiff demanded payment of the amount due him before he would execute any instruments. Defendant leased the property directly to the tenant in the first instance. Some two years later, he bought materials and made some repairs on the property. Plaintiff continued to recognize defendant's rights to any amounts that could be obtained in excess of the amount due him, though he deferred giving defendant a contract. Defendant claims that in October, 1925, he had an opportunity to sell his equity for $3,500, but he had no written offer and could not remember the full name of one of the parties who made this verbal offer while standing at a street corner. Obviously, it seems reasonable to believe that if he had a real offer, he would have taken action at the time. He also claims that a Mr. Volker made an offer to exchange defendant's equity for another one in property in Royal Oak, Michigan. Volker testified that he saw plaintiff, but made no offer to pay him any amounts. He admits that plaintiff stated that he was willing to issue a contract to be assigned and that he would give one when the deal was ready to go through. There appear to have been no other "offers."

On October 2, 1928, defendant's son wrote plaintiff asking him to set a date on which to figure the amount due, and secure a contract. Plaintiff replied that he would see defendant and fix a date, and that in case defendant had a prospect for sale of the property, then to get busy and sell; that the

difficulty in selling Detroit property was becoming greater and that if it continued, defendant would get very little for his equity; that the tenant would only pay a very much reduced rental and that in case defendant knew of a good, reliable tenant, to let him know as the rent offered was inadequate. Apparently nothing further was done.

Defendant claims that plaintiff kept putting him off from time to time and that after asking him to pay him the $2,000, representing what he claimed was his original equity, he finally gave up trying to do anything with the property. Five and a half years after the property had been transferred to plaintiff, defendant began suit in the St. Clair circuit court, claiming that plaintiff by his conduct had confiscated defendant's equity in the property and was liable for damages. The judge set aside a verdict of $5,000 and ordered a new trial.

Plaintiff thereupon filed a bill in the instant case asking that the action at law be enjoined and that his lien on the Detroit property be foreclosed. The trial judge held that the situation had become too complicated for equitable relief and in dismissing the bill of complaint, relegated the parties to an action at law.

Though we are fully appreciative of the informality and indefiniteness of the agreements, nevertheless an equitable lien, amounting to a mortgage and established in plaintiff's favor, was attached to the Detroit property for almost six years prior to the beginning of the suit. At no time during the long interval that followed did defendant make any offer to pay plaintiff. While there was no agreement as to the time of payment, it cannot be assumed that the loan was to go on forever, and that defendant was to try to sell his equity while plaintiff waited

for his money. Where· no time for payment is stated, the law will presume a reasonable time. More than a reasonable time did elapse, but no payment was made. The failure to bring the foreclosure proceeding was not harmful to defendant even though plaintiff took no action until the lawsuit was begun. Had defendant received a contract, it could have been foreclosed by summary proceedings long before the instant litigation was begun. We cannot overlook plaintiff's continued recognition of defendant's rights to all amounts, if any, realized in excess of the indebtedness. Plaintiff paid the two prior mortgages and was getting into a worse position from time to time. We believe that the parties should be placed back *in statu quo* as far as possible; that the temporary injunction restraining the action at law should be made permanent; that an accounting should be had so as to determine the amount due plaintiff and that a decree of foreclosure be entered. While the turning over of the rents of the property· was purely a voluntary act, inasmuch as the contract is now being treated as a mortgage, and plaintiff has not been entirely without fault, it is equitable under· the circumstances that defendant should have possession of the property from and after the date of this opinion until the expiration of the period of redemption.

A decree may be entered in accordance herewith. Plaintiff will recover costs.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.