*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BORSAND FAMILY FOUNDATION INC and
JEWISH VALUES INSTITUTE,

        Plaintiffs/Counter-Defendants-
        Appellants,

v

WOODWARD AVENUE GROUP LLC,

        Defendant/Counter-Plaintiff-Appellee,

and

GLENN DESROSIERS,

        Defendant-Appellee.

UNPUBLISHED
November 04, 2025
11:57 AM

Nos. 368456; 369201
Oakland Circuit Court
LC No. 2022-194226-CZ

Before: K. F. KELLY, P.J., and O'BRIEN and ACKERMAN, JJ.

PER CURIAM.

This case arises from an agreement between neighboring landowners. Defendants agreed not to oppose plaintiffs' request for a special-use permit, and in return the parties committed to conditions involving repaving, landscaping, cost sharing, and a perpetual easement. Their cooperation later broke down, resulting in this litigation. The trial court found that a contract had been formed and entered orders to implement the parties' agreement. Plaintiffs now appeal, contending that there was no meeting of the minds and that the agreement did not satisfy the statute of frauds. We affirm.

## I. FACTS

The parties own adjoining parcels in Bloomfield Township. Defendant Woodward Avenue Group (WAG) owns a building and holds an easement to use eight parking spaces in the lot immediately to the east, where it also maintained a dumpster. Co-defendant Glenn DesRosiers is WAG's sole owner. Plaintiff Borsand Family Foundation (BFF) later purchased most of that

neighboring lot, including the portion containing the dumpster. It also acquired the parcel immediately south of WAG's property, intending to lease the building to co-plaintiff Jewish Values Institute to operate a synagogue. Concerned about increased traffic and congestion, DesRosiers initially opposed plaintiffs' application for a special-use permit. DesRosiers later agreed to withdraw his objection if BFF undertook several site improvements and entered ongoing cost-sharing arrangements. On June 12, 2019, the Bloomfield Charter Township Board of Trustees approved the special use permit "Subject to the Following Conditions," which included "the agreement between [plaintiffs] and [defendants]."

Following that meeting, the parties continued to communicate. On June 19, 2019, DesRosiers memorialized the commitments in an email to plaintiffs:

> I would ask that your attorney . . . draft a letter of agreement and easement pursuant to all of the agreed upon items below as outlined on record at Bloomfield Township so that my attorney . . . can review and approve it for mutual execution. The agreed upon items that are to be included in the agreement are as follows:

> 1. Borsand Family Foundation . . . pays for the complete removal and replacement of the rear parking lot within twelve (12) months utilizing one (1) of three (3) commercial paving contractors . . . .

> 2. Borsand Family Foundation . . . pays for the complete construction of a brick and limestone dumpster enclosure, concrete pad and metal doors to match my building and to be designed and specified by Woodward Avenue Group . . . .

> 3. There shall be a perpetual recorded easement for shared dumpster access between 36330/36360 Woodward Avenue (owned by Woodward Avenue Group, LLC) and 36300 Woodward Avenue (owned by the Borsand Family Foundation).

> 4. As long as the Borsand Family Foundation owns 36300 Woodward Avenue, there shall be 50/50 sharing of the annual dumpster costs using one (1) of three (3) commercial contractors . . . .

> 5. Commencing upon execution of the Agreement, there shall be three (3) years of 50/50 cost sharing or maintenance of rear property exclusively by Great Lakes Landscape Design, LLC (this should substantially improve the maintenance and appearance of the rear landscaping).

The next day, plaintiffs' counsel responded: "The terms you noted below are correct," adding that the conditions "are going to be part of the site plan approval document that the Township is preparing. This means that we do not need an agreement." After further discussion, on June 24 plaintiffs' counsel emailed DesRosiers and, point-by-point, indicated assent on behalf of his clients in red text.

Negotiations eventually stalled, and no more formal document was executed. In June 2020, plaintiffs notified defendants that they would no longer share the cost of waste-removal services and demanded that defendants remove the dumpster from the BFF property. By May

2022, the relationship had deteriorated further, and plaintiffs filed suit for trespass based on defendants' continued use of the dumpster. Defendants counterclaimed, alleging breach of contract and seeking specific performance and declaratory relief.

After a three-day bench trial, the court issued findings of fact on October 13, 2023. It concluded that the parties had entered into a valid, binding contract as of June 24, 2019. It therefore entered a judgment of no-cause as to plaintiffs' complaint against defendants and granted relief to defendants on their counterclaims. As part of the declaratory relief, the court declared that the contract contained the following terms, which it ordered the parties to specifically perform:

1. That [plaintiffs] shall pay for the complete removal and replacement of the rear parking lot within 12 months, utilizing one of three contractors: Ajax Paving Industries, Allied Contraction, or Asphalt Specialists. This shall be done on or before October 12, 2024.

2. That [plaintiffs] shall pay for the complete construction of a brick and limestone dumpster enclosure with concrete pad and metal doors to match 36330/36360 Woodward Avenue. The design for the enclosure shall be completed by [WAG] or their agent or contractor within six months of the date of this Order.

3. That there shall be a perpetual recorded easement for shared dumpster access for 36330/36360 Woodward Avenue. The parties shall submit the proposed easement through separate stipulated order no later than October 19, 2023, and then, after [the trial court] signs and enters that order, the parties shall record the easement with the Oakland County Register of Deeds within 14 days of the [trial court's] signature and entry. Furthermore, the proposed order for the easement must state that it is a final order which closes this case.

4. That as long as [BFF] owns 36300 Woodward Avenue, there shall be a 50/50 sharing of the annual dumpster costs using one of three contractors: Waste Management, GFL, or Republic. The contract shall be in Defendant Glenn DesRosiers' name,[1] shall be paid by Defendant Glenn DesRosiers, and then [BFF] shall reimburse 50 percent of the total cost. This arrangement shall continue as long as both [BFF] and [WAG] occupy their respective properties; if one of these parties sells or abandons their property, this portion of the agreement becomes null and void. It is not the intention of this Court that this provision creates a covenant that runs with the land, but merely creates binding terms that govern the specific relationship between the parties in this case.

5. That there shall be three years of 50/50 cost sharing of maintenance of the rear property that will be completed by Great Lakes Landscape Design, LLC, and this three-year period shall commence on October 12, 2023.

---

[1] The trial court later modified this portion of the order to clarify that the waste-management contract would be in WAG's name, not DesRosiers's.

6. That there be only one dumpster which shall not exceed its current size.

7. That the dumpster shall not be moved to a location to interfere with either parties' property rights.

8. That no party shall interfere with the property rights of the other.

Plaintiffs appeal as of right from this judgment in Docket No. 368456.

Under paragraph three of the trial court's order, the parties were to submit for its review proposed written easements suitable for recording. After further disputes about its terms, on December 6, 2023, the court selected the final legal description and ordered that the easement be perpetual and recorded with the Oakland County Register of Deeds. Plaintiffs appeal by leave granted from this order in Docket No. 369201.[2] This Court later consolidated the appeals.

## II. STANDARDS OF REVIEW

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). This Court also reviews de novo whether a statute of frauds bars enforcement of a contract. *Id*. at 458. "This Court reviews de novo a trial court's ruling in a declaratory action." *Smith v Straughn*, 331 Mich App 209, 214; 952 NW2d 521 (2020). "The circuit court's findings of fact, if any, following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010).

## III. ANALYSIS

Plaintiffs challenge the trial court's decision on two grounds. First, they contend that various provisions of the agreement the trial court recognized are subject to—but fail to satisfy—the requirement of a signed writing imposed by the statute of frauds. Second, they assert that the trial court imposed a contract on the parties that varied substantially from what they agreed to during their course of dealings, to the point that there was no meeting of the minds between the parties and no contract ever existed. We find both arguments unpersuasive.

### A. STATUTE OF FRAUDS

Michigan law requires that certain agreements be in writing and signed to be enforceable. This case implicates two of those requirements. First, "[e]very contract for . . . any interest in

---

[2] It is not entirely clear that plaintiffs needed to appeal from this latter order. All of their arguments appear to challenge the existence and enforceability of the parties' agreement, which the trial court recognized in the October 13 judgment from which plaintiffs appeal of right. In any event, it was at minimum a reasonable precaution for plaintiffs to take.

lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the . . . sale is to be made . . . ." MCL 566.108. See also MCL 566.106. Second, "[a]n agreement that, by its terms, is not to be performed within 1 year from the making of the agreement" is "void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise." MCL 566.132(1)(a).

Plaintiffs correctly identify two aspects of the agreement that fall within these provisions: (1) the grant of an easement to defendants for dumpster access and (2) the three-year commitment to share landscaping costs. They argue that the writings here fail to recite the essential terms of those obligations and that the documents were not signed as required by law. We disagree.

## 1. ESSENTIAL TERMS

For a contract to satisfy the statute of frauds, its essential terms must be expressed in writing. In the context of real-property agreements, those essential terms include "the identification of (1) the property, (2) the parties, and (3) the consideration." *Zurcher v Herveat*, 238 Mich App 267, 290-291; 605 NW2d 329 (1999). A later unpublished case applied this principle to easements and held that the essential terms of an easement include "the easement's location, size, and method of access" and "the primary responsibilities of each party regarding implementation of the easement." *St. Paul of the Cross Passionist Retreat Ctr, Inc v SBA Towers III, LLC*, unpublished per curiam opinion of the Court of Appeals, issued January 15, 2015 (Docket No. 318325), p 3. Plaintiffs assert that the writings here fail to recite these essential terms because they omit the easement's location, size, and method of access, as well as the primary responsibilities of the parties regarding its implementation.

We conclude that the parties' agreement to a "perpetual recorded easement for shared dumpster access" is sufficiently definite to satisfy the statute. When an easement "is by grant, and the terms thereof locate the same by clear intendment, equity will not be so blind as to fail to recognize the evident and necessary designation of the" easement. *Greve v Caron*, 233 Mich 261, 264-265; 206 NW 334 (1925). As the Court explained in *Fox v Pierce*, 50 Mich 500, 504; 15 NW 880 (1883), the question is: "Are the means given to enable the court to declare in its paper decree exactly what right of passage exists, and of what shape and dimensions the place is, and precisely where it is located with reference to lot lines and permanent erections?"

In other words, once the parties agreed that an easement would exist, the court could reasonably supply the necessary details to resolve any disagreements about its precise contours. That is exactly what the trial court did here. The parties unambiguously committed to an easement for shared dumpster access. The court required the parties to submit proposed recordable easements for approval. In doing so, it rendered the easement "capable of determinate location under a common sense view of the grant and the situation of the dominant and servient estates at the time of the creation of the easement." *Greve*, 233 Mich at 265. Moreover, "the primary responsibilities of each party regarding implementation of the easement" were reflected in the related contract provisions requiring cost sharing for waste removal and construction of the dumpster enclosure.

## 2.  ELECTRONIC SIGNATURE

Under the Uniform Electronic Transactions Act (UETA), MCL 450.831 *et seq*., "[i]f a law requires a signature, an electronic signature satisfies the law."  MCL 450.837(4).  The statute defines an electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." MCL 450.832(h).  Plaintiffs note that the emails from their attorney included boilerplate at the bottom stating that "[n]either . . . the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message."  Plaintiffs contend that this disclaimer "controls and prevents the court from treating the email as an electronic signature."

We do not read the statute in this fashion.  Nothing in the statute establishes a per se rule that boilerplate disclaimers control or that they override the substance of the communication itself. To the contrary, the comments to the UETA observe that "[w]hether any particular record is 'signed' is a question of fact.  Proof of that fact must be made under other applicable law.  This Act simply assures that the signature may be accomplished through electronic means."  UETA, § 2, comment "Electronic signature."

Here, the parties' full course of dealing matters.  Plaintiffs' counsel unequivocally confirmed that "[t]he terms you noted below are correct."  He also insisted that "we do not need an agreement" because the commitments were already binding, which discouraged efforts to reduce the deal to a more formal writing.  Taken together, those actions reasonably demonstrated adoption of the emails with intent to sign.  The trial court's finding that the emails were electronically signed was not clearly erroneous.

## B.  MEETING OF THE MINDS

Plaintiffs also assert that there was no meeting of the minds as to the essential terms of the broader agreement—that is, those portions not subject to the statute of frauds—that the trial court recognized and enforced.  "[A] contract requires mutual assent or a meeting of the minds on all the essential terms."  *Kloian*, 273 Mich App at 453.  "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind."  *Id*. at 454 (cleaned up).  Once again, we disagree.

As detailed above, on June 19, 2019, DesRosiers sent an email to plaintiffs' counsel describing the terms of their agreement.  Plaintiffs' counsel responded that "[t]he terms you noted below are correct," adding that those terms "are going to be part of the site plan approval document that the Township is preparing," meaning that "we do not need an agreement."  DesRosiers responded that the parties were "on the same page."  On June 24, plaintiffs' counsel replied to the ongoing email chain, responding point by point in red text and confirming assent to each condition discussed.

These messages demonstrate that the parties expressly agreed to the conditions recited in DesRosiers's email.  Further discussion only strengthened the inference of a valid agreement. They confirmed their intention to split landscaping costs for at least three years, to replace and repave the parking lot, and to have DesRosiers arrange waste-removal services under a shared-

cost arrangement. Plaintiffs also expressed agreement to continue the existing contract with Waste Management, and both sides began pursuing bids for paving and dumpster-enclosure work. These words and actions objectively demonstrate the parties' mutual assent to the five conditions reached during the Township hearing and documented in DesRosiers's June 19 email. See *id*.

The centerpiece of plaintiffs' argument on appeal concerns the eight specific terms that the trial court enumerated in its order of specific performance. Plaintiffs contend that those provisions exceeded the parties' agreement and therefore that no contract ever existed. We conclude that the court was exercising its equitable authority to supply reasonable details—such as new deadlines where the original ones had expired, logistical directions to facilitate performance, and clarifications on aspects of the easement—necessary for practical implementation of the contract. In doing so, the court did not undermine assent but preserved it, taking reasonable steps "to salvage at least some of the unexecuted part of the agreement." 2 Restatement Contracts, 2d, § 270, comment *a*, p 351.

The court's approach accords with long-standing Michigan precedent. "So long as the essentials [of a contract] are defined by the parties themselves, the law supplies the missing details by construction." *Nichols v Seaks*, 296 Mich 154, 159; 295 NW 596 (1941). For example, "[w]here no time for payment is stated, the law will presume a reasonable time." *Siegel v Sharrard*, 276 Mich 668, 673; 268 NW 775 (1936). And if "the contract itself contain[s] no provision making time of the essence thereof," then "time will not be held to be of the essence of the contract." *Waller v Lieberman*, 214 Mich 428, 436; 183 NW 235 (1921). "In the absence of such explicit conditions, the court may imply a reasonable time period." *Brotman v Roelofs*, 70 Mich App 719, 727; 246 NW2d 368 (1976).

The repaving obligation illustrates this principle. Plaintiffs promised in June 2019 to "pay[] for the complete removal and replacement of the rear parking lot within twelve (12) months." By the time the trial court ruled in October 2023, that deadline had long since expired. Requiring completion within 12 months of judgment did not add a new term; it simply reinstated the obligation within a feasible timeframe. The same reasoning applies to the landscaping provision. Although the parties agreed to "three (3) years of 50/50 cost sharing or maintenance of rear property," they never specified when that period began. By fixing commencement at the time of judgment, the court gave meaning to the promise rather than leaving it uncertain or obsolete.

Likewise, plaintiffs' obligation to build a dumpster enclosure lacked any express deadline. The court's decision to require completion within six months merely imposed a reasonable time for performance, something the law expressly allows. See MCL 440.2309(1) ("The time for shipment or delivery or any other action under a contract if not . . . agreed upon shall be a reasonable time.").

The waste-management arrangement follows the same logic. The parties agreed to "50/50 sharing of the annual dumpster costs using one (1) of three (3) commercial contractors." To make that commitment workable amid a breakdown in cooperation, the court directed that defendants would enter into the waste-management contract, pay the associated invoices, and then receive 50-percent reimbursement by plaintiffs. This directive merely operationalized an undisputed obligation.

In short, the parties manifested their agreement to the terms laid out in DesRosiers's June 19 email as early as June 20, when plaintiffs' counsel wrote that "[t]he terms you noted below are correct," and certainly no later than June 24, when plaintiffs' counsel specifically expressed agreement to the ongoing discussions of each term. There was a meeting of the minds as to the terms of the contract, and we affirm the trial court's declaration of the details to observe and procedures to employ in implementing the agreement.

## III. CONCLUSION

Plaintiffs made a series of commitments to defendants in exchange for the valuable consideration of defendants' agreement to withdraw their objection to plaintiffs' application for a special use permit. Those commitments were documented in emails between the parties and adopted on plaintiffs' behalf by their counsel. The record includes written memorialization of the essential terms of the parties' agreement, and the trial court did not clearly err in finding that counsel's emails constituted valid electronic signatures notwithstanding the boilerplate disclaimer. The trial court's subsequent specification of deadlines and logistical details—such as supplying new deadlines where the previous ones had expired—fell within its equitable authority to enforce and effectuate specific performance of the parties' contract. The judgment of the trial court is affirmed.

/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien
/s/ Matthew S. Ackerman