*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAFA DABISH,

      Plaintiff-Appellant,

v

ZAK ESSAK and PANORAMA PROPERTY'S, LLC, doing business as VENETIAN GRAND BANQUET HALL,

      Defendants-Appellees.

UNPUBLISHED
January 16, 2026
10:28 AM

No. 373994
Macomb Circuit Court
LC No. 2021-001738-NZ

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

After a remand by this Court,[1] plaintiff, Safa Dabish, appeals as of right the trial court's order denying his renewed motion to enforce a settlement agreement between plaintiff and defendants, Zak Essak and Panorama Property's, LLC, doing business as Venetian Grand Banquet Hall, which required defendants to execute a mortgage and consent judgment. Plaintiff also challenges the trial court's order on remand, which held there was no settlement agreement and, instead, ordered the parties to execute another settlement agreement with a modified payment schedule. On appeal, plaintiff contends the trial court erred: (I) by ordering the parties to execute a written settlement agreement that was inconsistent with the settlement agreement made in open court because (a) it did not include a consent judgment and mortgage and (b) modified due dates for payments; (II) by holding the parties did not reach a settlement; and (III) by denying plaintiff's renewed motion to enforce a settlement agreement. We reverse and remand for further proceedings.

---

[1] *Dabish v Essak*, unpublished per curiam opinion of the Court of Appeals, issued September 25, 2024 (Docket No. 367893).

# I. BACKGROUND

The facts underlying this case were previously summarized by this Court. "Plaintiff filed suit against defendants for breach of contract, unjust enrichment, fraudulent inducement, and common law and statutory conversion, alleging that he loaned Essak, as the owner and operator of Panorama, $372,000 for renovations to the property housing the Venetian, but never received repayment." *Dabish v Essak*, unpublished per curiam opinion of the Court of Appeals, issued September 25, 2024 (Docket No. 367893), p 1.

Following dueling motions for summary disposition, Judge Richard L. Caretti dismissed plaintiff's unjust enrichment and common-law conversion claims. For the remaining claims, at a hearing on May 12, 2023, the parties put the terms of a settlement agreement on the record before visiting Judge Antonio Viviano as follows:

> "*Court*. Did you want to put the settlement on the record and swear the clients.
>
> *Plaintiff's Counsel*. Sure. Your Honor, the terms of the settlement are as follows:
>
> The Defendant is going to pay the Plaintiff 250 thousand dollars in accordance with this payment schedule. The first payment being 90 days out from today, which is approximately August one. I'm sorry, can we agree it be August 1, 2023.
>
> *Defense Counsel*. The settlement agreement.
>
> *Plaintiff's Counsel*. Well, I mean, let's put a date certain on it, if it's okay.
>
> *Defense Counsel*. September 1st.
>
> *Plaintiff's Counsel*. September 1st. The first payment Your Honor of $50,000 is going to be made on or before September 1, 2023. And I'll provide counsel with wiring instructions, or if he is going to send a cashier check to my office, either way that is fine.
>
> The remaining four payments will be made again in $50,000 increments. The next one being on or before June 1, 2024. June 1, 2025. June 1, 2026 and the final payment on or before June 1, 2027.
>
> Of course, there is no prepayment penalty if they wish to make those sooner.

In the event there is a default on the payments and a payment is not made when it is due, then in that case notice will be required to be given to Rachel Badalementi, Michael Petrus and Bob Kirk via e-mail only.

And if the payment is uncured within 14 days of notice, then a pocket judgment for 372 thousand dollars will be entered by the Plaintiff pursuant to the settlement agreement merely by presentment to the Court with an affidavit verifying nonpayment and verifying that the notice and opportunity to cure have not been met.

Is that correct so far, counsel.

*Defense Counsel*.   The pocket consent judgment will be in the amount of.

*Plaintiff's Counsel*.   372 thousand dollars, include a provision calling for interest payments of 12 percent per annum, plus attorney fees and costs for the necessity of collection of same.

There will also be a provision that says a credit is given for any payments previously made.

The pocket judgment is going to be on all counts, remaining counts in the complaint.

Of course, it won't be entered if the payments are made.   It's only in the event of default.

And further security for the settlement agreement and the payments called for by the settlement, Your Honor, is that the Defendant Zak Essak is granting the Plaintiff a mortgage on the real property located at, located in Sterling Heights at 42300 Van Dyke Avenue.   Property tax ID is 1010152015000 and currently the property is owned by an entity called Van Sterling Properties LLC; is that correct.

*Defense Counsel*.   Yes.

*Plaintiff's Counsel*.   Okay.   And Mr. Zak Essak is representing there are no other liens or mortgages on the property.   That this mortgage will be the first secured lien position on the property and that he has authority to enter into the mortgage on behalf of Van Sterling Properties LLC by virtue of being one of its members.

Is that also correct.

*Defense Counsel*.   On both points, yes.

-3-

*Plaintiff's Counsel.* Okay. And again the security for the payment plan is both the mortgage and the consent judgment, if applicable.

*Defense Counsel.* So, and the only—

So all accurate. The mortgage is against the real property. The consent judgment is only against the named defendant, however, in the amount of the 372. The mortgage cap, the total amount of the mortgage is the 250. There is no interest on the mortgage, but there is interest on the pocket consent judgment that the Plaintiff will hold.

*Plaintiff's Counsel.* And the mortgage that I will present to counsel for execution such that I will be allowed to file it on the title to the property is going to be a standard form mortgage. It's going to reference that the parties, that this is security for a settlement agreement related to this case and that upon default then we're entitled to all the recourse of foreclosure and everything else that an ordinary mortgage, would ordinarily have by advertising obviously. Do you, are you okay with that?

*Defense Counsel.* That is right. In the event that there is a dispute, Judge, over the terms of the pocket consent judgment, the terms of the mortgage, we would ask that we be able to come back to you to --

*Plaintiff's Counsel.* Be the final arbiter.

*Defense Counsel.* The final arbiter. If for some reason you were not available, we would use Judge Caretti.

*Plaintiff's Counsel.* Judge Caretti is fine.

*Defense Counsel.* To do that.

*Plaintiff's Counsel.* And what that means, we can't agree on a term that I just say is reasonable in any mortgage, he says it is not, we'll let the Court make the decision and we are both bound by it.

*Defense Counsel.* Hopefully that doesn't happen, but just in case.

*Plaintiff's Counsel.* All right. I believe that is all the terms. I'm happy to voir dire my client just to confirm.

*Court.* Just one minute. Counsel for the defense, is that an accurate statement on the agreement of the parties.

*Defense Counsel.* Yes, Judge."

During voir dire, both plaintiff and Essak confirmed their agreement with the settlement terms as placed on the record, and defense counsel agreed the terms

reflected an accurate statement of the parties' agreement, neither objecting nor requesting to add terms. Counsel for the parties also agreed to draft a written settlement agreement memorializing the terms, as well as a pocket consent judgment and mortgage, with any dispute over the documents' terms to be decided by the court as final arbiter.

Following a status conference, the court held a hearing on July 3, 2023, because the parties could not agree on whether the written settlement agreement should contain a mutual release term. Plaintiff's counsel asserted the written agreement should memorialize the terms stated on the record, which did not include a release, while defense counsel stated she assumed, in error, that the settlement agreement would of course contain mutual releases. The court agreed that neither the parties' e-mail exchanges nor their statements at the May 12 hearing referenced a release, but ruled "that the settlement agreement will contain release language that releases the Defendant with respect to any and all issues presented in the subject space and also would preclude any of the Plaintiffs or their related companies that may not be parties to this litigation with respect to the indebtedness in this case." The court reasoned:

> "[W]ith respect to [plaintiff counsel's] position that the settlement agreement should release nothing, the Court finds that position unattainable and notes for the record under [plaintiff counsel's] argument the settlement agreement could be executed and then he on behalf of his clients or related company could file a lawsuit the next day with respect to his indebtedness."

In response to plaintiff's argument that the release should not apply to nonparties, the court held firm, stating, "This particular release language applies only to the subject matter of this case," so "if any of the parties or related nonparties, companies have a separate issue against defendants, that is not related to this particular indebtedness, that would be something they could bring."

Resolution stalled again following the hearing, prompting the court to enter a notice of intent to dismiss for lack of progress on July 21, 2023. On July 31, 2023, plaintiff filed a motion to enforce the settlement agreement, repeating his arguments and citing MCR 2.507(G) in support of his assertion that the settlement agreement as placed on the record was complete and binding. In their own motion to escrow settlement proceeds, defendants noted that the parties always intended to draft a written settlement agreement, pocket consent judgment, and mortgage after putting the settlement on the record, and asserted that plaintiff had yet to sign the revised settlement agreement reflecting the court's ruling.

As the parties had not yet drafted the written documents, defendants argued in response to plaintiff's motion to enforce that the record settlement was not complete because it did not contain all essential terms. And, in response to defendants' motion to escrow, plaintiff asserted he had not yet signed the revised settlement agreement because the court failed to enter a written order following its July 3, 2023 ruling on the record. Further, plaintiff argued that contrary to

-5-

defendants' assertions, defendants could defend against any attempt at re-suit by filing a motion for summary disposition under MCR 2.116(C)(7).

The court held a hearing on August 21, 2023, affirming its prior ruling, and subsequently entered an order dismissing plaintiff's claims and requiring the parties to execute:

> "A. Settlement Agreement and Release containing language that "releases the Defendant[s] with respect to any and all issues presented in the subject [c]ase and also would preclude [Plaintiff] or [his] related companies that may not be parties to this litigation from bringing a lawsuit with respect to the indebtedness in this case" consistent with the Court's ruling on July 3, 2023, at **Exhibit A**;
>
> B. The Mortgage at **Exhibit B**; and
>
> C. The Pocket Consent Judgment at **Exhibit C**."   [*Id*. at 1-5 (footnote omitted).]

"Judge Antonio Viviano only presided over the hearing in which the settlement was placed on the record. All other relevant matters were handled by Judge Caretti." *Id*. at 2 n 1.

Plaintiff appealed the trial court's order requiring that he and defendants "execute a settlement agreement with release, mortgage, and pocket consent judgment, and dismissing his claims." *Id*. at 1. "Plaintiff argue[d] that the trial court erred by requiring the parties to include a release in their written settlement because that agreement was meant to memorialize the terms of the settlement agreement made in open court, which contained no such release." *Id*. This Court reversed and remanded for further proceedings. *Id*. This Court noted "neither party mentioned a release of any kind when placing the terms of the settlement agreement on the record in open court—a fact which defendants do not dispute and the court found in its ruling at the July 3 hearing." *Id*. at 7. Noting that a settlement agreement made in open court is binding, this Court stated: "Both plaintiff and Essak expressed agreement with the terms as placed on the record. And counsel for both parties confirmed that the record contained all the settlement terms, and that those terms were an accurate statement of the parties' agreement." *Id*. This Court stated "the settlement agreement placed on the record, which did not contain a release, was complete and binding under MCR 2.507(G)." *Id*. This Court continued: "[A] written settlement premised on the agreement made in open court should conform to that agreement." *Id*. at 8. This Court concluded:

> Here, neither party mentioned a release of any kind when placing the terms of the settlement agreement on the record in open court, both plaintiff and Essak expressed agreement with the terms as placed on the record, which were unambiguous and sufficient to form a contract, and counsel for both parties confirmed that the record contained all the settlement terms and those terms were an accurate statement of the parties' agreement. Though we recognize that the vast majority of final settlements contain some form of a release, we are confined to enforcing what the parties actually agreed to in open court. Accordingly, the trial

court erred when it required that the parties include, in their written settlement agreement, a release. [*Id*. at 11.]

After this Court's September 25, 2024 remand, the trial court scheduled a status conference to occur on October 31, 2024, which was adjourned to November 7, 2024. A status conference was held before Judge Caretti on November 7, 2024. The trial court noted it started the conference "off the record," in which it "indicated to counsel that given [this Court's] ruling, a settlement agreement consistent with their opinion should be entered." However, the trial court noted there was an issue "with respect to terms of the consent judgment and the payment schedule." Counsel for defendants "indicated that the terms of that settlement should be honored, which were that the first payment would be made in 90 days and then the next payment the following June. And then the schedule thereafter should take effect." Counsel for plaintiff "took the position . . . defendant is behind by a year or more in terms of payments, and that the back payments should be made, I believe he said immediately, and then the schedule followed."

The trial court stated that "a settlement agreement was never entered" because "there never was an agreement," and the first payment "should commence in 90 days, . . . then the next payment in June." Plaintiff's counsel objected, contending the settlement agreement prescribed specific payment dates. Plaintiff's counsel continued: "[W]hat we're asking for is that the [c]ourt compel the [d]efendant to sign the settlement agreement in which we struck out the release provision and tendered that to us along with the mortgage and the pocket consent judgment." Plaintiff's counsel argued defendants were "in default" of the payments due on September 1, 2023, and June 1, 2024, and requested the trial court order defendants to make those payments. However, the trial court held that the settlement agreement was "never executed," and defendants "don't have an obligation to make those payments." Defendants' counsel agreed the "settlement agreement was put in place," but "was never executed with regard to the past due payments." Defendants' counsel argued the first payment should be due "within 90 days." He continued: "By signing this, we are already in default. That is not what was contemplated on this matter." The trial court concluded:

> My ruling is that a settlement agreement in conformity with the terms set forth by the Court of Appeals should be entered.
>
> Given the fact that there was no agreement and in the [c]ourt's opinion the schedule outlined in the original agreement, which would have called for a first payment on September 1st 2023, and the next payment on June 1st, 2024. That agreement was never signed so those terms were never in effect.
>
> Consistent with the spirit and language of the settlement placed on the record, the first payment of $50,000 is now due 90 days from today's date. The next payment will be of $50,000 will be due on June 1st, 2025. And then there is, there are three succeeding payments, correct? And the three succeeding payments will be made on June 1st of 2026, 2027[,] and 2028.
>
> So the parties can enter an order consistent with the Court's ruling. The order should also state that the case remains closed.

On November 12, 2024, plaintiff filed a renewed motion to enforce the settlement agreement, requiring defendants to execute the mortgage and consent judgment as required by this Court's ruling ("the renewed motion"). Plaintiff contended the trial court was bound to follow this Court's ruling that the settlement agreement "must be enforced according to the terms placed on the record in open court." Plaintiff attached a proposed order for the trial court, ordering "that the parties are to contemporaneously execute" the mortgage and the consent judgment. Plaintiff also attached a proposed copy of the mortgage and a proposed copy of the consent judgment. Defendants opposed plaintiff's renewed motion, contending the trial court must enter an order in accordance with its ruling on the record on November 7, 2024, which outlined a new payment schedule. The first $50,000 payment was to be due "within 90 days of this Order," and then four more $50,000 payments were owed on June 1, 2025, June 1, 2026, June 1, 2027, and June 1, 2028. Defendants attached a proposed order.

On November 15, 2024, defendants filed a notice of presentment of an order on remand from this Court, requesting the trial court enter it within seven days under MCR 2.602(B)(3). The proposed order stated "the parties are to contemporaneously execute" a settlement agreement "without release language," and containing a new payment schedule with five increments of $50,000. The first payment was owed "within 90 days of the date of this Order[.]" The second payment was due "on or before" June 1, 2025. The third payment was due "on or before" June 1, 2026. The fourth payment was due by June 1, 2027. And the fifth payment was due by June 1, 2028. On November 15, 2024, plaintiff submitted an "alternative" proposed order, which would order the parties to "contemporaneously execute" the mortgage and consent judgment. Plaintiff objected to the entry of defendants' proposed order on remand, arguing defendants owe $50,000 for the missed payment on September 1, 2023, and $50,000 for the missed payment on June 1, 2024. Plaintiff contended defendant "sought to change the terms of the payment schedule." Defendants filed a response in support of the proposed order, arguing the trial court abided by this Court's directive on remand.

The trial court held a motion hearing on December 16, 2024, addressing the renewed motion to enforce the settlement agreement and plaintiff's objections to defendants' seven-day order. Plaintiff's counsel argued the trial court was not permitted to modify any terms of the settlement agreement but, rather, "bound by the ruling of the Court of Appeals, which require[d] that this [c]ourt enter an order enforcing the parties actually agreed to settlement agreement in open court." Plaintiff requested that the trial court order defendants "to execute the documents that they agreed to execute," including the mortgage and consent judgment. Defendants' counsel asserted plaintiff's objection to the seven-day order was a motion for reconsideration. The trial court "st[ood] by its prior ruling" and denied the renewed motion. On December 18, 2024, the trial court entered an order on remand, noting that "a [s]ettlement was never reached by the parties[.]" The order provided in pertinent part:

**IT IS HEREBY ORDERED** that the parties are to contemporaneously execute the following document:

A. A Settlement Agreement, without release language, providing for the following payment schedule:

First Payment - $50,000 within 90 days of the date of this Order;

Second Payment - $50,000.00 on or before 6/1/25;

Third Payment - $50,000.00 on or before 6/1/26;

Fourth Payment - $50,000.00 on or before 6/1/27;

Fifth Payment - $50,000.00 on or before 6/1/28.

Two days later defendants filed a notice of presented containing a proposed order denying plaintiff's renewed motion. On December 30, 2024, the trial court entered an order denying the renewed motion.

Plaintiff subsequently filed a complaint for writ of superintending control, arguing that successive appeals are not an appropriate remedy. Plaintiff requested this Court exercise its superintending control to direct (a) the trial court to enter the consent judgment and (b) the Macomb County Register of Deeds to enter the mortgage. On January 8, 2025, this Court dismissed the complaint for superintending control "for lack of jurisdiction because an appeal from the December 18, 2024 order is available." *In re Safa Dabish*, unpublished order of the Court of Appeals, entered January 8, 2025 (Docket No. 373834). On January 8, 2025, plaintiff appealed the order denying the renewed motion and also challenged the order on remand.

## II. ANALYSIS

Plaintiff argues that the parties entered a valid settlement agreement on the record in open court and that the trial court erred in its determination that there was no settlement and by ordering the parties to execute a written settlement agreement that (a) modified the terms of the payment dates and (b) did not include certain terms, including a consent judgment and mortgage.

This Court reviews for an abuse of discretion a trial court's decision on a motion to enforce a settlement agreement. *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "The existence and interpretation of a contract are questions of law reviewed de novo. An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006) (quotation marks and citations omitted). "De-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Tripp v Baker*, 346 Mich App 257, 273; 12 NW3d 45 (2023) (quotation marks and citations omitted). "The construction and application of a court rule are questions of law that this Court reviews de novo on appeal." *Kloian*, 273 Mich App at 456. "Whether the lower court properly followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 406; 952 NW2d 586 (2020) (quotation marks and citation omitted).

-9-

"Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed. Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian*, 273 Mich App at 452-453 (quotation marks and citation omitted). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* at 454 (quotation marks and citation omitted). "A contract, including a written contract, may be modified orally or in writing. The modification must be by mutual consent." *Id.* (citation omitted). "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id.* at 455 (quotation marks and citation omitted).

"When a case involves an agreement to settle pending litigation, it must comply with MCR 2.507(G) to be enforceable." *Dabish v Gayar*, 343 Mich App 285, 290; 997 NW2d 463 (2022) (quotation marks, footnote, and citation omitted). MCR 2.507(G) provides:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

"The purpose of MCR 2.507(G), which 'is in the nature of a statute of frauds,' *Kloian*, 273 Mich App at 456, is to take the guesswork out of settling a pending lawsuit." *Dabish*, 343 Mich App at 291-292. "[T]he settlement must exist in a form that indisputably reflects a final agreement of the parties. That is, the settlement must either be set forth on the record in open court or memorialized in a document subscribed by the party challenging the existence of an enforceable settlement." *Id.* at 292. "A valid compromise and settlement is final, conclusive, and binding upon the parties; it is as binding as any contract the parties could make, and as binding as if its terms were embodied in a judgment[.]" *Meyer v Rosenbaum*, 71 Mich App 388, 392; 248 NW2d 558 (1976) (quotation marks and citation omitted). " 'Every presumption of judicial care, of professional competence, and of decretal stability is against the overthrow, in the appellate court, of such [a court recorded stipulation] and of orders and decrees based thereon.' " *Id.*, quoting *Wagner v Myers*, 355 Mich 62, 68; 93 NW2d 914 (1959).

"This Court will enforce unambiguous contracts as written." *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 475; 986 NW2d 427 (2022). "It is not this Court's role to undermine the parties' freedom to contract by rewriting clear contractual language to comply with what the Court perceives as the parties' intent." *Id.* "Rather, this Court construes contractual terms in context, according to their commonly used meanings. A contract is ambiguous when its provisions are capable of conflicting interpretations. A contract is not ambiguous solely because the parties may interpret a term differently." *Id.* (citations omitted).

In the prior appeal, this Court recognized that "Both plaintiff and Essak expressed agreement with the terms as placed on the record. And counsel for both parties confirmed that the record contained all the settlement terms, and that those terms were an accurate statement of the parties' agreement." *Dabish*, unpub op at 7. This Court stated "the settlement agreement placed on the record . . . was complete and binding under MCR 2.507(G)," *id.*, and concluded:

[B]oth plaintiff and Essak expressed agreement with the terms as placed on the record, which were unambiguous and sufficient to form a contract, and counsel for both parties confirmed that the record contained all the settlement terms and those terms were an accurate statement of the parties' agreement. . . . [W]e are confined to enforcing what the parties actually agreed to in open court. [*Id*. at 11.]

The trial court abused its discretion by not enforcing the terms of the settlement agreement, as it erred by modifying the dates of the payment schedule under the settlement agreement. This Court recognizes its previous decision was limited to the narrow holding that the trial court erred by requiring the parties to include a release provision in a written settlement agreement. *Dabish*, unpub op at 11. This Court made clear, however, that the parties formed a contract on May 12, 2023, when they agreed to "the terms of the settlement on the record in open court[.]" *Id*. The contract included that defendant was to pay plaintiff $250,000 under a payment plan consisting of five payments, the first of which was due on September 1, 2023, or " '90 days out from today[.]' " *Id*. at 2. The other four payments were due on June 1, 2024, June 1, 2025, June 1, 2026, and June 1, 2027. *Id*. It is undisputed these terms were included in the contract. Yet, after remand, defendants asserted it was inequitable to enforce the payment plan dates in a written agreement because it would place defendants in default. The trial court's finding that there was no agreement regarding the dates of the payment plan because no written agreement was executed was erroneous because the on the record settlement prescribed five payment dates. The dates were exceedingly clear, and incapable of "conflicting interpretations." See *Zwiker*, 340 Mich App at 475. The trial court was not permitted to modify the bargained for dates of the payment plan solely because defendants interpreted the terms differently. See *id*.

We appreciate the trial court's attempt at a practical solution to the problem of certain dates having passed since the agreement was enforced. And, in certain cases a court may provide reasonable details to implement a contract. See *Nichols v Seaks*, 296 Mich 154, 159; 295 NW 596 (1941) ("So long as the essentials [of a contract] are defined by the parties themselves, the law supplies the missing details by construction."). But "the law will presume a reasonable time" only when "no time for payment is stated[.]" *Siegel v Sharrard*, 276 Mich 668, 673; 268 NW 775 (1936). The trial court was not permitted to provide any reasonable details, however, because the payment dates were specific and not open to interpretation. See *Brotman v Roelofs*, 70 Mich App 719, 727; 246 NW2d 368 (1976) (explaining that it is only "[i]n the absence of such explicit conditions" that a court "may imply a reasonable time period"). Plaintiff does not receive the benefit of the bargain under the trial court's modified payment plan. Under the settlement agreement, plaintiff was to receive the final payment on June 1, 2027. *Dabish*, unpub op at 2. However, under the new schedule, plaintiff would not receive the final payment until a year later.

Although defendants did not submit a brief on appeal, defendants' counsel argued *after remand* in the trial court that the settlement agreement "was never executed with regard to the past due payments," and the parties did not contemplate executing a written agreement with defendants "already in default." This argument is unavailing. During voir dire at the May 12, 2023 hearing, the parties and defense counsel "confirmed" that the terms stated on the record were accurate. Worth emphasizing, defense counsel did not object to any terms or request to add any terms. *Dabish*, unpub op at 4. The settlement agreement placed on the record did not include language that the first payment would occur 90 days after the date that a written agreement was executed.

-11-

Instead, the date of the first payment was September 1, 2023. *Id*. at 2. The parties did not consent to modify any terms of the contract. See *Kloian*, 273 Mich App at 454-455.

## III. CONCLUSION

The trial court abused its discretion by not enforcing the terms of the settlement agreement, which also included a provision for a pocket judgment and mortgage, and by denying the renewed motion. Reversed and remanded for further proceedings. We do not retain jurisdiction. Plaintiff may tax costs, having prevailed in full. MCR 7.219(A).

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado